Turley *v.* John Hancock Mut. L. Ins. Co. et al.,
Appellant.

Argued May 3, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Albert C. Hirsch,* and with him *Reed, Smith, Shaw & McClay,* and *Watson & Freeman,* for appellants.— A pamphlet issued by an insurance company while soliciting insurance does not become a part of the policy. Munhall v. Travelers Insurance Company, 300 Pa. 327; Insurance Company v. Johnson, 23 Pa. 72.

*Ward Bonsall,* for appellee, cited: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213; Trexler Lumber Co. v. Allemannia Fire Ins. Co., 289 Pa. 13; Hubbard v. Globe Indemnity Co., 87 Pa. Superior Ct. 483.

Opinion by James, J., October 2, 1933:

Mary Ann Turley, appellee herein, filed her bill in equity against the John Hancock Mutual Life Insurance Company and the National Works Welfare Association praying for a decree that the defendants pay the sum of $1,000 with interest under a certain life in-

surance policy upon the life of her husband, Daniel J. Turley. A joint answer was filed by the defendants and a rule for decree for want of a sufficient answer was issued. On this rule a decree was entered directing defendants to pay said amount, from which decree this appeal is taken.

The averments and answers of the pleadings establish the following facts: In 1926 Daniel J. Turley, an employe of the National Works of the National Tube Company became a member of the National Works Welfare Association which was organized in 1926, and was formed "to encourage and promote the general welfare of its members, including the procuring of group life insurance for its members." All members at work on the effective date were entitled to $1,000 insurance without medical examination and without restriction as to age. A booklet called "A Plan of Protection for You and Yours" was issued by the association and the insurance company and was given to all eligible employes, together with an application, and all employes were urged to join. Daniel J. Turley, the insured, became a member of the association in accordance with the terms of the pamphlet giving the details of the group life insurance plan and a certificate of life insurance under and subject to the group policy of insurance was issued in the sum of $1,000 payable to Mary Ann Turley as beneficiary if death should occur while a member of the association and during the continuance of said policy. The policy was issued July 26, 1926 and in the month of December, 1928, at which time insured was beyond the age of 60 years and while a member of the association and an employe of the National Works aforesaid, he became totally and permanently disabled and unable to perform labor. The insured paid his regular dues until September 10, 1929, when he was notified that he was discharged from the employ of the National

Works and his name removed from the roll of employes thereof. The insured died July 28, 1930. No objection was raised as to the joinder of the parties by the defendants, who rely upon the alleged discharge defeating any benefits.

The pamphlet which was issued by the defendants contains under the heading "Details of Group Life Insurance Plan," inter alia, the following: "2. Benefits. (a) Death Benefit. The amount of the insurance is payable, in the event of death at any time or place, to the beneficiary selected, in a single sum. (b) Total and Permanent Disability Benefits. In the event of total and permanent disability, occurring before the age of 60, and resulting from either sickness or accident, no further premium will be collected, and the total amount of life insurance carried will become payable to the member himself in a single sum. *If total and permanent disability occurs after the age of 60, the insurance will be paid only when death occurs.* This Permanent Total Disability benefit is entirely independent of any benefits provided by compensation laws." (Italics ours.)

Also, under the general heading of "General Questions and Answers" the following is found: "6. Q. To whom is the insurance payable? A. In case of your death, the insurance is payable to the beneficiary whom you name. In case of your becoming permanently and totally disabled before reaching sixty years of age, the insurance is payable to you."

The certificate of life insurance stated that under and by virtue of a group policy of insurance, "the life of Daniel J. Turley is insured for the sum of one thousand dollars, payable to Mary Ann Turley—wife—as beneficiary if death shall occur while a member of the association during the continuance of said policy. . . . . . The insurance provided for by said policy terminates with the termination of membership

582

in the said association unless the member shall elect to continue the insurance in accordance with the following conversion privilege. Conversion Privilege. Any member of the association covered under this group policy shall, in case of the termination of employment for any reason whatsoever, be entitled to have issued to him by the company without evidence of insurability upon application to the company made within thirty-one days after such termination .. .. ...., a policy of life insurance ...... in an amount equal to the amount of his protection under such group insurance policy ...... Permanent Total Disability. Any member who shall furnish the company with due proof that he has become totally disabled by injuries, sickness or disease and has been continuously prevented thereby from performing any and every duty pertaining to his occupation and presumably will during his life time be prevented from pursuing any occupation for wages or profit, ...... he shall, be deemed to be totally and permanently disabled and the insurance hereunder will become available, provided such disability or loss has been sustained before attaining the age of 60."

The pamphlet issued also contained a copy of the constitution and by-laws of the Welfare Association of which Art. I, Sec. 2 of the constitution and by-laws provides: "Section 2. (a) Any member leaving the employ of National Works of the National Tube Company or the McKeesport Connecting Railroad Company, for any cause whatsoever, will automatically lose his membership in this association."

Appellants strenuously urge that the pamphlet should not have been considered as it was merely a proposal for insurance which led up to the final issuance of the certificate of life insurance and the said proposal was merged in the certificate and should not be considered as part of the insurance contract.

The group insurance policy was not made a part of

the record and the certificate of insurance which was issued to the deceased was issued in violation of Art. IV, Sec. 410 of the Act of May 17, 1921, P. L. 682, (40 PS 510), which provides: "No policy of life insurance, ...... shall be issued or delivered by any ...... life insurance company ...... unless it contains, in substance, the following provisions: ...... (d) A provision that the policy shall contain the entire contract between the parties; ......" In this connection, we must also consider Art. III, Sec. 318 of the Act of May 17, 1921, P. L., 682, (40 PS 441), which is substantially a re-enactment of the Act of May 11, 1881, P. L. 20, which provides: "All insurance policies, issued by ...... insurance companies ......, in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; and, unless so attached and accompanying the policy, no such application, constitution, or by-laws, or other rules shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, constitution, by-laws, or other rules be considered a part of the policy or contract between such parties." These provisions of the Act of 1921 were for the benefit and protection of the insured and the defendants, not having taken advantage of the provisions of the act of assembly, can not now take advantage of their own neglect.

We think the language adopted by the court in Norristown Title Co. v. John Hancock Mut. Life Insurance Co., 132 Pa. 385, 19 A. 270, is particularly applicable to the question involved in this case, where it said (p. 391): "The Act of 1881 was evidently in-

tended to impose a duty upon insurance companies, and to protect the insured. It had often happened that upon the trial of a case an insurance company would offer a by-law, or the application of the insured, in evidence, for the purpose of impaling the plaintiff upon some technical point. The application, when made, is filed with the company, and when the assured receives his policy he often puts it away, and in time forgets what he had stated in his application. The Act of 1881 was passed to compel the company to attach the application to the policy, and upon its failure to do so it can not be received in evidence. It will be noticed that, in each of the cases cited, the application was offered by the insurance company. This is the first instance, to my knowledge, where a company has been heard to object to the admission of the application in evidence, when such offer came from the insured. To sustain such an objection on the part of the company, is to allow the latter to take advantage of its own neglect in not complying with the Act of 1881. We therefore think the court below erred in excluding this application.''

Under the admitted facts that the insured became a member of the defendant association upon its formation in accordance with the terms of said printed pamphlet jointly issued by both defendants, we can not permit them to take advantage of their own neglect in not complying with the Act of 1921 and therefore hold that the court did not err in considering the pamphlet issued by the defendants. This question has been raised in various jurisdictions and although there is authority to the contrary, we believe that this pamphlet is to be regarded as part of the contract of insurance entered into upon the faith of the representations contained therein.

In the case of Laib v. Fraternal Reserve Life Assn., (1913), 177 Ill. App. 72, it was held that a pamphlet

sent out by agents of an insurance company, making representations as to the plan on which it insures, is to be regarded as part of the contract of insurance entered into upon the faith of the representations, and is to be considered in connection with the policy in determining what the contract was. In an action by the beneficiary on a benefit certificate, where the defendants contend that the certificate is subject to a deduction of one-half its face value, it is error to exclude a pamphlet offered in evidence by plaintiff to show that the agents of defendant had authority to issue the certificate payable in full.

In Southern Mutual Life Ins. Co. v. Montague, 84 Ky. 653 (1887), it was held that where an insurance company, through its chief officers, issues a pamphlet making representations as to the plans upon which it insures, and sends the pamphlet out by its soliciting agents, such pamphlet is to be regarded as part of the contract of insurance entered into upon the faith of the representations contained therein, and is to be considered in connection with the policy in determining what the contract was.

This question could not arise on contracts entered into since the passage of the Act of April 26, 1929, P. L. 785, Sec. 1, 40 PS 532, which relates to standard provisions of group life insurance contracts and which provides: "No policy of group life insurance shall be issued ...... unless it contains in substance the following provisions: ...... (b) a provision that the policy, the application of the employer, and the individual applications, if any, of the employes insured, shall constitute the entire contract between the parties, ......" This act was undoubtedly passed to avoid the uncertainties and doubts which have arisen in the construction of certificates of life insurance issued under group policies similar to the case at bar.

Appellants are not consistent in their attitude in

demanding the exclusion of the pamphlet because their main defense is based upon a section of the constitution and by-laws of the Welfare Association which, under the Act of 1921, supra, was clearly inadmissible because it violated the provisions of the act of assembly requiring that said by-laws or constitution should be made a part of the policy of insurance and should not be considered in evidence, unless so made a part of the policy. The act was intended to be invoked for the benefit of the insured and not for the benefit of the insurance company.

Assuming that the court had the right to consider the provisions of Section 2 of the constitution and by-laws, supra, we are persuaded that the failure of the deceased to report for work because of his total and permanent disability, was not such a leaving of his employment as would justify his discharge and removal from the rolls of the company as to cause a termination of his insurance. The word "leaving" must be construed in its usual sense with reference to employment and involves some voluntary act on the part of the employe. A more reasonable interpretation of the word "leaving" as applied to an employe would mean the quitting of the employment and does not contemplate the failure of the employe to report for work by reason of a total and permanent disability.

Appellants further contend that even though the pamphlet was to be considered as part of the insurance contract, an examination of the certificate of insurance, constitution and by-laws of the Welfare Association and the pamphlet itself clearly indicates that the particular section involved was not to be considered as part of the contract of insurance. If there are any inconsistencies, contradictions or doubts as to what the insurance covered, they were created by the defendants themselves as the pamphlet, constitution and by-laws, and certificate of insurance were solely pre-

pared by the defendants, and whatever doubts may exist must be resolved in favor of the insured.

In dealing with the questions involved, we must keep in mind the well established rule of law that contracts of insurance, in case of any doubt, are to be construed in favor of the insured and against the insurer: Mac-Donald v. Met. Life. Ins. Co., 304 Pa. 213, 155 A. 491.

Under the paragraph designated "Benefits," Section (a) relates to death benefits and Section (b) relates to total and permanent disability benefits. Section (b) provides: "In the event of total and permanent disability, occurring before the age of 60, and resulting from either sickness or accident, no further premium will be collected, and the total amount of life insurance carried will become payable to the member himself in a single sum." The next portion of the section provides: "If the total and permanent disability occurs after the age of 60, the insurance will be paid only when death occurs."

It is difficult to arrive at any other conclusion than that under these separate sections, when stated as simply as possible, the insurance shall be paid to the disabled person if the total and permanent disability occurs before the age of 60, while if the total and permanent disability occurs after the age of 60 the insurance will be paid to the beneficiary mentioned in the policy at the time of the death of the insured. Appellants urge that the phrase "no further premium will be collected" was particularly applicable to the disability occurring before age 60 and that it does not apply to the total and permanent disability occurring after age 60. We find no such definite statement in this clause, as with just as much force and reason the language "no further premium will be collected" should be applicable to the total and permanent disability if it occurred after age 60. The insurer undoubtedly recognized the inability to pay premiums in

the event of a total and permanent disability, and that inability would exist whether the disability occurred before or after age 60.

In this connection, we can not overlook Question 6 under the heading of "General Questions and Answers" where it provides that "In case of your death, the insurance is payable to the beneficiary whom you name. In case of your becoming permanently and totally disabled before reaching sixty years of age, the insurance is payable to you." This answer does not cover the happening of a total and permanent disability occurring after the age of 60 as referred to under the heading of "Benefits," so that from an examination of the "General Questions and Answers" we find no specific method providing for the total and permanent disability occurring after the age of 60 and therefore we must confine our observations to Section (b) providing for total and permanent disability benefits.

The construction as maintained by the appellants absolutely destroys any force and effect of the latter portion of Section (b) under Paragraph 2. The insured in the present case was nearing the age of 60 when the policy was issued in July, 1926, as at the time of the happening of the disability in December, 1928, he was over the age of 60, and the clause providing for disability after age 60 was undoubtedly a strong inducement for the filing of his application.

To construe this policy as contended for by appellants would be to permit the insurance company to have perpetrated a legal fraud upon this deceased and his beneficiary. For an insurance company to issue a circular in which certain insurance benefits are definitely provided for and then to issue a certificate not in accordance with the plan and proposal offered would be such a misrepresentation as in good faith should not be permitted.

Under the terms of the pamphlet when the disability

occurred after 60 years of age, the policy became vested, its payment being merely delayed until the death of the insured. It is a rather unusual clause, yet it is the one to which the insurance company and the association agreed. The payment of premiums by the insured and their acceptance by the defendants for a period of ten months after the happening of the total disability is a strong confirmation of the fact that defendants themselves believed this insurance policy was still operative. However, under our view of this insurance contract, upon the happening of the total and permanent disability after the insured had reached the age of 60 years, the face of the policy became vested in the beneficiary and its payment merely delayed until the death of the insured.

Decree affirmed at the cost of the appellants.