Employers' Liability Assurance Corporation, Ltd., Appellant, *v.* Lebanon Auto Bus Company.

Argued May 25, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*L. E. Meyer,* with him *Philip S. Davis* and *Meyer, Brubaker & Lewis,* for appellant.

*Douglass D. Storey,* with him *C. Vincent Henry, Jr.,* and *Storey & Bailey,* for appellee.

OPINION BY MR. JUSTICE LINN, July 6, 1948:

The plaintiff appeals from judgment for the defendant in a suit for additional insurance premium. Jury trial was waived. The policy, written on a "National Standard Automobile Liability Policy" form, was dated December 29, 1942. It specified the "policy period" to be from January 1, 1943, to January 1, 1944. Defendant's occupation was stated to be "Bus Transportation." On July 10, 1943, defendant surrendered the policy for cancellation and, prior to suit, paid what it considered to be owing to plaintiff.

The point for decision is whether the premium must be short rated and that depends on the true construction of the policy. The learned trial judge denied recovery on two grounds: (1) that typewritten endorsements so modified printed portions of the policy form as to eliminate short-rating; and (2) that the omission to print in, or attach to, the policy the customary short rate table, referred to in the cancellation clause, excluded short rating from consideration: section 318 of The Insurance Company Law of 1921, P. L. 682, 40 PS 441, quoted later in this opinion.

1. The premium rate for public liability was $3.84 per hundred dollars of earnings and for property damage $.56 per hundred, a total rate of $4.40. As part of the "insuring agreements" in the policy, it was "agreed that the insured will at the expiration of this policy pay to the company an earned premium based on the total gross earnings (whether collected or not) during that period as developed by audit." The policy specified that on an "estimated basis coverage" a minimum premium of $941.00 for public liability and $250.00 property damage, a total of $1,191.00, should be paid. More than that sum was earned and paid.

When the defendant surrendered the policy for cancellation on July 10th, it had been effective 190 days, during which defendant's gross earnings were $151,-933.50. Plaintiff submits that if the daily average of

earnings had been the same for the remainder of the policy period, the earnings for the year for which the insurance was written, would have been $291,872.25, and that plaintiff is entitled to a short rate premium applied to that sum. Defendant's earnings for the entire year were $256,188.52, which, as the actual is preferable to the estimated, is the sum, we think, to which the premium rate must be applied and not to the greater sum which was not earned. Applying the rate per hundred, $4.40, to earnings of $256,188.52, results in the annual premium of $11,272.29, which would have been payable if defendant had not cancelled.

The "insuring agreements" contained in the policy were subject to certain conditions. Paragraph 18 of these conditions provides: "18. Cancellation.[1] This policy may be cancelled by the named Insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. . . . The mailing of notice . . . shall be sufficient proof . . . and the effective date and hour of cancellation stated in the notice shall become the end of the policy period . . . If the named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. . . ."

The learned trial judge ruled that this condition "was not intended to apply to the insurance contract before us," and he reached that conclusion, as we understand his opinion, by considering a typewritten endorsement attached to the policy to be inconsistent with the condition stated in the cancellation clause. He said: "It appears, from the provisions of this insurance contract that the 'expiration of this policy' is either '(a) the stated termination date of January 1, 1944, or, (b) the date on which either Plaintiff or Defendant cancels, whichever date is the earlier.' At the expiration date

[1] That provision is substantially in the form stated among the "Permitted Provisions in Standard Fire Policies" in section 522 of "The Insurance Company Law of 1921," P. L. 682, 73, 40 PS 657, 658.

Defendant is to pay an earned premium based on the total gross earnings during that period as developed by audit, which period in this case would be the 190 days during which the policy had not expired. . . . If the policy be obscure in its meaning, it must be construed, as between the parties, most strongly against the insurance company which issued it. . . .

"The typewritten rider, construed as aforesaid, conflicts with that part of the eighteenth printed condition relating to short rating. Under the rider, Defendant agreed to pay an earned premium based on the total gross receipts from January 1, 1943, to July 10, 1943, a period of 190 days. The earned premium is based on gross receipts during the 190 day period, and not upon projected gross receipts for a period after the expiration of the policy. . . ."

In construing the policy, it is helpful to consider its structure. It begins by stating an insurance in consideration of the payment of the premium and in reliance on statements contained in the declarations and "subject to the limits of liability, exclusions, conditions and other terms of this policy." Then follow a section or division entitled "insuring agreements" containing eight paragraphs; another section or division entitled "exclusions" stating that the insurance does not apply in the circumstances there lettered from (a) to (g); there is a third division entitled "conditions" containing 19 paragraphs, of which paragraph 18, quoted above, is entitled "cancellation." The provision, quoted by the learned judge, "that the insured will at the expiration of this policy pay to the company an earned premium based on the total gross earnings (whether collected or not) during that period as developed by audit," is part of the "insuring agreement." That agreement provides coverage for a year and specified the expiration date to be January 1, 1944. It is true that one of the conditions to which the "insuring agreement" was subject appears in the cancellation condition, paragraph 18. This condition,

however, provided what should occur if defendant exercised the right to cancel; it provided that if defendant would enjoy the benefit of the condition, defendant must pay the short rate premium. By cancelling, defendant assumed that obligation. The policy had been written for a year. If the defendant shortened the policy period he would pay a greater daily average premium than if the insurance had continued to the end of the year for which the annual premium had been agreed to. One of the purposes of requiring short rating is to discourage cancellations for the purpose of shifting from one insurer to another.[2]

As shown above, the premium on the earnings during the year was $11,272.29. The evidence[3] shows that the short rate percentage for the 190 day period at the time in question was 73. Applying that percentage to the premium for the year ($11,272.29) would make the amount due for the 190 days $8,228.77. The plaintiff acknowledges that defendant has paid $5,598.55 on account.

In defendant's brief it is said that the cancellation condition in this policy was "intended only for the customary standard policy with a fixed premium and not for a policy with an unknown premium which is dependent on gross earnings for a period as in the case at bar." We cannot so construe the policy. Shortly stated, we think the parties agreed to coverage for a year at $4.40 a hundred dollars of earnings with a minimum premium of $1,191.00, the insurance being subject to cancellation during the year on condition that if done by the defendant, he would pay the short rate premium.

2. We must also differ from the conclusion of the learned judge that the short rate table referred to in paragraph 18 of the "conditions" was not admissible because not printed in the policy. Section 318 of The

---

[2] Which is what the record shows the defendant did.

[3] While the learned trial judge in the end struck out the evidence which he had received on this subject, we consider it relevant.

Insurance Company Law of 1921, P. L. 682, 40 PS 441, on which the court relied, provides: "All insurance policies . . . in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws or other rules referred to; and, unless so attached and accompanying the policy, no such . . . or other rules shall be received in evidence, in any controversy between the parties to . . ., nor shall such . . . other rules be considered a part of the policy or contract between such parties." It will be observed that what must be attached are "copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; . . ." In this case no application, constitution or by-laws are involved. Under the familiar principle of ejusdem generis, the words "or other rules" referred to, necessarily relate to and are restricted to the preceding words application, constitution or by-laws: *Frederick's Estate,* 333 Pa. 327, 5 A. 2d 91; *Derk v. Zerbe Township,* 322 Pa. 350, 185 A. 647. The application of this principle is illustrated in several cases, two of them referred to in the opinion of the court below: in *Mowry v. Nat. Protective Society,* 27 Pa. Superior Ct. 390, and *Campbell v. Gt. Eastern Cas. Co.,* 73 Pa. Superior Ct. 333, manuals of the defendant insurance companies were excluded; such documents were in the category of constitutions and by-laws and therefore not admissible because not attached. But in *Sipp v. Ins. Co.,* 293 Pa. 292, 142 A. 221, the rate tables, though not printed in the policy, were held admissible; such tables could not be classified as within the scope of the terms constitutions and by-laws. Paragraph 18 of the "conditions" provided that if the insured cancelled the policy an earned premium would be computed "in accordance with the customary short rate table . . ."

"Short rate" in this connection, is a technical term to be given its appropriate meaning by the court: see the Statutory Construction Act, 1937, P. L. 1019, section 33, P. L. 1022, 46 PS 533. The term is employed in The Insurance Company Law of 1921, at P. L. 737. The short rate table is a standard table and to be effective, must be approved by the Insurance Commissioner and filed in that department of the state government. The evidence shows that there was no difficulty in applying it in this case. The witnesses, Mr. Moore, called by the plaintiff, and Mr. Nixon, called by the defendant, understood the term and its use in the same sense.

Defendant also presents an argument to the effect that there was accord and satisfaction discharging the liability asserted by plaintiff. That contention was so thoroughly disposed of against defendant by the learned trial judge that it need not now be discussed.

The judgment is reversed and the record is remitted for the entry of judgment for the plaintiff consistent with this opinion.