**The CITY OF FORT WORTH, Appellant,**

v.

**L. A. BOSTICK, Appellee.**

**No. 17301.**

Court of Civil Appeals of Texas, Fort Worth.

April 7, 1972.

Rehearing Denied May 5, 1972.

S. G. Johndroe, Jr., City Atty., and Ted P. Gorski, Jr., Asst. City Atty., Fort Worth, for appellant.

Fannin & Fannin, and Oliver W. Fannin, Jr., Fort Worth, for appellee.

OPINION

BREWSTER, Justice.

In a non-jury trial the court granted the plaintiff, L. A. Bostick, a mandatory injunction against the City of Fort Worth requiring the City to allow Mr. Bostick to use all of his accumulated sick leave before retiring him involuntarily from his job as a city fireman on a disability pension and requiring the City to pay Mr. Bostick his salary as a fireman until such time as he had used all of his accumulated sick leave. The City has appealed from that decree.

The undisputed evidence showed the following: on December 3, 1970, Mr. Bostick became totally and permanently disabled by

reason of a bona fide illness from performing the duties of a fireman; he has been continuously so disabled since that time; at that time he was 64 years of age and had been a Fort Worth city fireman for 37 years; the City purported to retire Mr. Bostick involuntarily as of midnight on April 30, 1971, and tendered to him at that time in a lump sum a check in payment for ninety days accumulated sick leave; as of April 30, 1971, Mr. Bostick had 205 days of unused sick leave that he had accumulated in connection with his work as a Fort Worth city fireman; and that Mr. Bostick objected to being retired and contended that he was entitled to use all of his 205 days of accumulated sick leave before he could be forced into an involuntary retirement.

It was also undisputed that the electorate of Fort Worth had at a lawful election adopted Art. 1269m, Vernon's Ann.C.S. (The Firemen's and Policemen's Civil Service Act) effective Jan. 1, 1948. It was undisputed that Senate Bill 622 was later passed by the legislature and became effective in April, 1971, prior to the involuntary retirement of Bostick.

The ultimate question to be determined in this case is: Did the applicable law only require the City to pay Bostick compensation for 90 days of accumulated sick leave as they did, when they involuntarily retired him for disability, resulting from illness, or does the applicable law require the City to allow him to use his entire 205 days of accumulated sick leave before they could force him into an involuntary retirement because of such disability?

Section 26 of Art. 1269m, V.A.C.S., is the part of that statute that provides for sick leave for firemen. The parts of it that are material here read as follows:

"Employees shall be allowed to accumulate fifteen (15) working days of sick leave with pay in one (1) calendar year.

*"Sick leave with pay may be accumulated without limit* and *may be used while an* *employee is unable to work because of any* *bona fide illness.* . . .

"In the event that a Fireman or Policeman for any reason *leaves* the classified service, he shall receive, in a lump sum payment, the full amount of his salary for the period of his accumulated sick leave, provided that such payment shall not be based upon more than ninety (90) working days of accumulated sick leave. . . ." (Emphasis ours.)

The provisions of Senate Bill 622 that are material here are as follows: "No member of a fire department in any city or town in this State having a population of not less than 350,000 nor more than 650,000, according to the last preceding federal census, shall be involuntarily retired prior to reaching the mandatory retirement age set for such cities' employees unless he is physically unable to perform his duties. In the event he is physically unable to perform his duties, he shall be allowed to use all of his accumulated sick leave, before retirement."

The population of Fort Worth according to the applicable 1970 Federal Census was 393,455.

In this case the City contends, among other things, that Art. 1269m, Sec. 26, is controlling of the question presented here and that when that statute is properly construed it only required the City to pay Mr. Bostick, upon involuntarily retiring him, for 90 days of the accumulated sick leave that he had, regardless of the fact that his accumulated sick leave at the time amounted to 205 working days.

The provisions of Senate Bill 622, if valid and enforceable, would require the City, since Mr. Bostick was physically unable to perform his duties at the time pertinent here, to allow him to use all of his accumulated sick leave before retiring him.

The City contends that Art. 1269m is a general law and that Senate Bill 622 is a special or local law and that the provisions of this local law are in direct conflict with

the provisions of the general law that controls the subject involved, and are therefore invalid, void and unconstitutional.

Mr. Bostick contends that this Senate Bill 622 in no way conflicts with the provisions of Art. 1269m, Sec. 26, when the latter statute is properly construed, and that when so construed it, too, requires the City, since Mr. Bostick was at all times pertinent physically unable to perform his duties, as a result of a bona fide illness, to allow him to use all of his accumulated sick leave before retiring him.

We have concluded that Bostick's contentions are correct.

The City concedes that it is bound by and required to comply with Art. 1269m, but says that all that statute requires it to do is pay Bostick 90 days of his accumulated sick leave when it retired him.

The City argues that it had the right to involuntarily retire Bostick because he was permanently and totally disabled as a result of his illness. The City argues also that as a result of this involuntary retirement Bostick *left* the classified service and is therefore entitled to receive pay for only 90 days of sick leave that he says the above quoted parts of Sec. 26 of Art. 1269m provide for.

We are convinced that if the proper construction of the two above quoted paragraphs of Sec. 26 of Art. 1269m is as contended for by the City that those two paragraphs of that statute would be in conflict as is hereinafter demonstrated.

The first of such paragraphs gives a fireman the right to accumulate sick leave with pay without limit and also gives him the right to use such sick leave during times that the fireman is unable to work because of any bona fide illness.

The second paragraph of Sec. 26, Art. 1269m (above quoted), if construed as the City contends that it should be, is to the effect that if a fireman's service with the City terminates for any reason whatever, including an involuntary retirement of him

by the City while ill and unable to work, that he then cannot use all of the accumulated sick leave that he had accumulated without limit, as is provided for under the first mentioned paragraph, during the time that he is unable to work by reason of illness. The City says that this paragraph of the statute only permits him to get pay for 90 days of such accumulated sick leave, even though at the time of such involuntary retirement such fireman is totally and permanently disabled as a result of a bona fide illness from performing his duties as a fireman and even though he desires to use his accumulated sick leave before being retired.

A fireman who has accumulated 205 days of sick leave and who is ill and unable to work cannot use this accumulated sick leave without limit during the time he is unable to work because of such illness, as he is unequivocally given the right to do under the first such paragraph, if he can be involuntarily retired while ill and unable to work, and in that manner limited to pay for only 90 days of his accumulated sick leave.

■ Established rules of law relating to the construction of statutes require a court to construe the above quoted parts of Sec. 26 of Art. 1269m in such a way as to avoid any conflict between them and in such a way as to reconcile and harmonize both provisions so as to give full force and effect to both of them. 53 Tex.Jur.2d 227–232, Sections 159 and 160 of Statutes.

Martin v. Sheppard, 129 Tex. 110, 102 S.W.2d 1036 (1937) holds that all parts of a legislative act should be given effect and reconciled if it is reasonably possible to do so.

In Guerra De Chapa v. Allen, D.C., 119 F.Supp. 129, the court held that a court should, in construing a statute, harmonize and reconcile its provisions so as to avoid conflicts.

By giving the word "leave," as used in the above quoted second paragraph of Sec.

26 of Art. 1269m, wherein it reads, "In the event that a Fireman or Policeman for any reason *leaves* the classified service, . . .", its natural, ordinary and popular meaning all conflict between the two quoted provisions of Sec. 26 is eliminated, the provisions of both are reconciled and harmonized, and both paragraphs are given full force and effect. (Emphasis ours.)

One meaning of "leave" is "quit." 24A Words and Phrases p. 296.

Webster's Third New International Dictionary defines the word "leave" as follows, when it is used in the context of the statute: "4a: Desert, abandon, forsake . . . b: to terminate association with: quit the service of . . . ."

When the word "leave" is used in the sense just mentioned it imports voluntary action or the exercise of volition by the person leaving.

The following is from 52A C.J.S. p. 752: "It (referring to the verb leave) appears to connote voluntary action."

Bostick has cited us to two cases from other jurisdictions that involve an employee leaving his employment and both hold that an employee *leaves* his employment only if he does so voluntarily. Those two cases, verly closely in point, are: Muesling v. International Ry. Co., 85 Misc. 309, 147 N.Y.S. 177 (1914) and Turley v. John Hancock Mut. Life Ins. Co., 110 Pa.Super. 578, 168 A. 356 (1933).

In Muesling v. International Ry. Co., supra, the employee, a conductor, in the application he signed in getting his job, had agreed: "In the event of my leaving the service of the company for any reason whatsoever within six months . . ." the employer could keep certain sums that would otherwise belong to the employee. This employee was fired after four months and the employer contended he had, under the above quoted provisions, given up his right to the sums involved. The New York Court held that the employee did not forfeit the sums involved because, under

the agreement, such sums were forfeited only where the employee *left* his employment of his own volition. The Court said at page 178 of 147 N.Y.S.: "Some, at least, of the primary meanings of the word 'leave' is to quit or depart, implying volition on the part of the person leaving or departing. The added words, 'for any reason whatsoever,' do not, in our opinion, materially alter or enlarge the primary meaning of the word used."

In Turley v. John Hancock Mut. Life Ins. Co., supra, the question involved was whether a totally and permanently disabled employee's coverage under a group insurance policy had terminated by reason of a provision in the constitution and by-laws of the employer which stated that "Any member leaving the employ . . . for any cause whatsoever, . . .' ceased to be a member of the association. The Pennsylvania Court held at page 359 of 168 A.: ". . . we are persuaded that the failure of the deceased to report for work because of his total and permanent disability was not such a leaving of his employment as would justify his discharge and removal from the rolls of the company as to cause a termination of his insurance. *The word 'leaving' must be construed in its usual sense with reference to employment and involves some voluntary act on the part of the employee.*" (Emphasis ours.)

The case of Gardner v. Metropolitan Life Ins. Co., 225 Mass. 439, 114 N.E. 717 (1917) was a Massachusetts case that involved an insurance policy that contained a provision to the effect the policy shall be void whenever the insured shall leave the service of his employer, except by reason of the death of the employee. The court held that the word "leave" as used in that policy is properly construed as meaning to *voluntarily leave* and that the provision therefore did not apply to render the policy void in an instance where the employee left his employer's service by reason of being unjustifiably discharged.

In the case of In Re Cattalini, 72 Cal. App.2d 662, 165 P.2d 250 (1946) a Califor-

nia statute was involved that provided, ". . . a minor child who has been 'left' by either or both parents in care and custody of another, etc. . . . ." The Court construed the word "left" as used in that statute as connoting voluntary action.

Price v. Minot, 107 Mass. 49 (1871) involved a contract between an employer and an employee that provided in substance: it is agreed that if, between certain dates, the employee should die or *leave* the company, pro rata shares for the then expired term shall be considered as earned and due. The court held that when that provision is properly construed it is only applicable in instances where the employee resigns or voluntarily quits his employment. The clause does not apply in instances where the employee's expulsion from the company's service was without his consent and against his remonstrance. See 24A Words and Phrases p. 296.

In all cases that we have found involving the meaning of the word "leave" when used in connection with an employer-employee relationship where the word is used therein in the sense of meaning to quit or terminate such employment the courts have construed it to mean a voluntary termination or a voluntary quitting of the employment.

▮ The first paragraph quoted above of Sec. 26, Art. 1269m, gave Bostick, under the facts of this case, the right, since he was sick, to use all of his accumulated sick leave, as he wished to do, before being retired. And when we apply the holdings of the above cited cases in construing the second quoted paragraph of Sec. 26, then it is apparent that Bostick did not "leave the classified service," within the meaning of that section, at the time the City purported to involuntarily retire him. We hold that the proviso in that paragraph limiting an employee who for any reason leaves the classified service to a payment based on not more than 90 days of his accumulated sick leave does not apply to an employee who is at the time sick and disabled by reason of a bona fide illness and who is

desirous of using all of his accumulated sick leave before retiring. It therefore did not apply to Bostick. His retirement was involuntary and he was therefore entitled to use all of his accumulated sick leave of 205 days before being retired, since he was at that time ill and unable to work by reason thereof.

Fort Worth Ordinance No. 5226, Sec. 7, Subparagraph 3, provides that: ". . . the member may continue his employment so long as he is able to fulfill his duties, . . . ." The City contends that this ordinance gave it the right to retire Bostick when it did because he was then totally and permanently disabled from fulfilling his duties. However, the prior enacted state statute, Art. 1269m, Sec. 26, gave Bostick the right to use all of his accumulated sick leave with pay without limit while unable to work because of a bona fide illness. The City cannot by the later enactment of its Ordinance 5226 take that right granted to him by the prior enacted state statute away from Bostick.

We hold that Bostick is entitled to the judgment he was awarded even in the absence of Senate Bill 622. He is entitled to the relief he was awarded under Art. 1269m, which statute the City contends controls the outcome of this case.

In view of the construction we place on Sec. 26 of Art. 1269m, we hold that it is not in conflict with Senate Bill 622. Senate Bill 622 merely clarifies the provisions of Art. 1269m and makes clearer Bostick's right to use all of his accumulated sick leave.

The City has urged other points of error by which it attacks the constitutionality and validity of Senate Bill 622. We hold that even if Senate Bill 622 had never been passed Bostick was entitled to the relief he got under Art. 1269m. Since this is true we will not further lengthen this opinion by discussing those points.

We have considered all of the City's points of error and overrule them.

The judgment is affirmed.