**Andrew S. PROUSI, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

No. CIV. A. 98–2585.

United States District Court, E.D. Pennsylvania.

Dec. 21, 1999.

Robert Goss, Ellicot City, MD, for Plaintiff.

Daniel Zucker, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

LOWELL A. REED, Jr., Senior District Judge.

Plaintiff Andrew S. Prousi ("Prousi") has brought this action for breach of contract seeking to recover for the refusal of defendant UNUM Life Insurance Company of America ("UNUM") to approve an application by Prousi to purchase an additional disability income policy under a "Future Insurance Option Rider" ("FIOR"). Presently before the Court are cross motions for summary judgment (Document Nos. 12 & 13). The parties agree that there are no issues of fact and that the resolution of this case turns on questions of law now before the Court. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.00, exclusive interest and costs. It is undisputed that Pennsylvania law applies. For the reasons stated below, summary judgement will be granted in favor of UNUM and against Prousi.

## I. BACKGROUND

Prior to the summer of 1992, Prousi was self-employed as a dentist in Montgomery County, Pennsylvania. On May 8, 1992, Prousi fell from a ladder and injured his spine. In July, 1992, Prousi became unable to practice dentistry due to his spinal injuries.

At the time of the accident, Prousi had a disability insurance policy with UNUM which provided that if Prousi, due to sickness or injury, became unable to perform the material and substantial duties of his regular occupation, that he would be entitled to receive a regular disability benefit. UNUM does not contest that Prousi has been continuously disabled since July 1992. Upon Prousi's claim for disability benefits, UNUM paid Prousi all monthly disability benefits in the base amount of $4,500.00, plus additional benefits in the amount of $392.85, for a current monthly disability benefit from UNUM in the amount of $4,892.85.

The policy also contains a FIOR rider, for which Prousi paid a separate, additional premium and which provides, *inter alia*:

### Standard Purchase Option

During each Standard Option Period, you may apply for an additional disability income insurance policy. We will issue the new policy on a Standard Option Date subject to the following terms:

\*    \*    \*    \*    \*    \*

(6) We will not issue an amount which, with all policies in force, would exceed our disability income limits for new applicants on the effective date of this rider or on the Option Date, whichever is higher. The limits are set by our normal underwriting procedures and apply to your average earned income....

(11) We will not issue a policy while the insured is disabled except as provided in the section entitled Option During Disability.

\*    \*    \*    \*    \*    \*

## Option During Disability

While you are disabled, you may apply for one additional policy during which the first Standard Option Period. The new policy will be subject to the same terms as a Standard Purchase Option except:

    (1) the amount of the new policy may not exceed the Option Amount. . . .

(Defendant UNUM Life Insurance Company of America's Memorandum of Law In Support of Its Motion for Summary Judgment ("Def.Exh."), Exh. D). The Option Amount is defined by reference to the benefit amount specified in the policy, i.e., five hundred dollars. (Exhibits to Plaintiff's Motion for Summary Judgment ("Plt.Exh."), Exh. D). At the time Prousi became disabled he was 42 years old. The first Standard Option Date after Prousi became disabled was on his 43rd birthday, January 5, 1993.

In December, 1995, based upon a representation by Prousi that he had not received notification in 1993 for the FIOR option date, UNUM provided Prousi with an application, permitting him to submit a retroactive application for the FIOR increase. On January 4, 1996, Prousi submitted his application to retroactively increase his coverage under the FIOR effective for the January 5, 1993 Standard Option Date.

UNUM utilizes an Issue and Participation table set by its normal underwriting procedures to determine a policyholder's eligibility to purchase an additional disability benefits policy under the FIOR. The table compares a policyholder's earned income and the total amount of his or her disability coverage in force at the time of application. If a policyholder is overinsured, i.e., if he or she has more in force disability coverage than is allowed by UNUM based upon the policyholder's income level, then the policyholder is ineligible to purchase additional coverage under an existing FIOR. Based upon Prousi's 1991 reported net income, UNUM determined that maximum amount of disability benefits Prousi was financially eligible for was $7,600.00. In 1993, Prousi was receiving $4,500.00 in monthly benefits from UNUM and $5,000.00 from Monarch Life Insurance Company for a total of $9,500 per month. Thus, UNUM determined that Prousi was overinsured by $1,900.00. (Def.Exh.F).[1] Accordingly, on February 26, 1996, UNUM denied Prousi's application to purchase additional coverage, "based on 1991 income, in force coverage and our issue and participation limits." (Def.Exh.D). On March 11, 1996, Prousi wrote to UNUM requesting additional information regarding the issue and participation limits. On March 19, 1996, UNUM responded by providing him with the issue and participation limit information. Prousi filed this lawsuit on May 19, 1998.

## II. LEGAL STANDARD

The parties have moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmov-

---

1. According to the deposition testimony of Prousi, he is also receiving $5,000.00 per month from a disability insurance policy issued by Combined Insurance and $4,000.00 per month from a disability insurance policy issued by CIGNA. It appears, therefore, that Prousi was actually over insured by more than $1,900.00. In addition, Prousi was receiving $19,366.00 per month for sixty months from an AIG policy and $6,700.00 per month for sixty months from a Paul Revere Insurance Company Buy Sell disability income policy. (Def. Exh. I, at 132–134; *see also*, Def. Exh. C). Thus, according to the information Prousi provided to UNUM and his deposition testimony, for the time during which all his disability policies were in paying benefits, Prousi was receiving approximately $560,000.00 per year (roughly three times his income prior to becoming disabled).

ing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982).

The dispute between the parties rests upon differing interpretations of the policy, a Pennsylvania statute and whether the statute applies as amended. The underlying facts are undisputed and the case is therefore ripe for final adjudication on the cross motions for summary judgment.

## III. DISCUSSION [2]

### A. 40 P.S. § 441

■ Prousi argues that UNUM is statutorily precluded from introducing into evidence its Issues and Participation limits table and, therefore, cannot justify denying his application to purchase additional coverage. *See* Article 3, § 318 of the Insurance Company Law of May 17, 1921, P.L. 682, 40 P.S. § 441 ("former § 441"). The statute upon which Prousi relies required that certain documents intended to be part of the insurance policy be attached to the policy delivered to the insured. *Id.* The

statute, however, was amended in 1997. Now the statute simply requires that a copy of the insured's application be given to the insured at some point before trial if the insurer wants to used the application as evidence. 40 P.S. § 441, as amended November 4, 1997. It is undisputed that the amended version does not preclude UNUM from introducing into evidence its Issues and Participation limits table. *See* 40 P.S. § 441. Thus, the Court must determine whether section 441 as amended applies to this litigation or whether the statute in force at the time the insurance policy was issued governs.

■ In Pennsylvania, a statute will not generally be construed to be retroactive unless it is clearly and manifestly so intended by the legislature. 1 P.S. § 1926. It is also well established, however, that legislation concerning purely procedural matters will be applied not only to litigation commenced after its passage, but also to litigation existing at the time of passage. *Morabito's Auto Sales v. Dep't of Transp.*, 552 Pa. 291, 715 A.2d 384, 386 (1998). "The general rule in determining whether a statute will be applied retroactively is as follows: Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But, where it concerns merely the mode of procedure, it is applied, as of course, to litigation existing at the time of its passage." *Morabito's*, 715 A.2d at 386 (quoting *Galant v. Dep't of Envtl. Resources*, 534 Pa. 17, 626 A.2d 496, 498–99 (1993) (internal quotations and citation omitted)).[3]

---

**2.** Prousi raises issues of first impression under Pennsylvania state law. In the absence of precedent from the Pennsylvania Supreme Court, as a federal court sitting in diversity, this Court must predict how the Pennsylvania Supreme Court would rule. *City of Erie v. Guaranty Nat'l Ins. Co.*, 109 F.3d 156, 159 (3d Cir.1997). In making this determination, the Court gives proper regard to the opinions of Pennsylvania's intermediate courts. *Factory Mkt. v. Schuller Int'l*, 987 F.Supp. 387, 392 (E.D.Pa.1997).

**3.** I note that the Pennsylvania Supreme Court has, with no analysis, held that a prior amendment to Section 441 did not apply to

pending litigation. *Sipp v. Philadelphia Life Ins. Co.*, 293 Pa. 292, 142 A. 221, 223 (1928). In *Sipp*, the Court reasoned that the statute, as amended in 1921, was not applicable because the contract was entered into before the statute was amended. *Id.* As the Court provided no analysis with respect to the procedural/substantive nature of the statute and because the Court offered alternative reasons for admitting the short rate tables at issue, I am unpersuaded that *Sipp* is dispositive of the issue presently before this Court. Indeed, in *Sipp*, the Court reasoned that the tables would not have been "rules" under the statute as amended in 1921. *Id.* at 223. I also note that, prior to 1997, the statute had not been

Although the line between substantive and procedural laws is not always a bright one, and can be difficult to determine, here it is clear that 40 P.S. § 441 merely specifies the procedures whereby documents are accepted into evidence. *See, e.g., Lynn v. Prudential & Casualty Ins. Co.,* 422 Pa.Super. 479, 619 A.2d 779, 781–82, 783–84 (1993) (obligation of contract not impaired by statute allowing insurer to challenge medical bills where medical services were rendered after the effective date of statute, even though policy had been issued prior to effective date of statute); *Cruz v. Workers' Compensation Appeal Bd.,* 728 A.2d 413, 415 (Pa.Cmwlth. 1999) (statute requiring Workers Compensation Judge to consider reports from Utilization Review Organization was procedural, doing "little more than expand[ing] the expert medical reports available for the WCJ's consideration, and applied to pending litigation"); *Ruth Family Medical Center v. Workers' Compensation Appeal Bd.,* 718 A.2d 397, 402 n. 10 (Pa.Cmwlth. 1998) (statute increasing from twenty-five weeks to fifty-two weeks the time period from which medical reports are admissible is procedural and applies to litigation existing at time of passage); *see also, Galant v. Commonwealth of PA, Dep't of Envtl. Resources,* 534 Pa. 17, 626 A.2d 496 (1993) (error of law to not apply statute which gives the Commission the power to modify the appointing authority's action regardless of whether charges are proven because statute merely changes the scope of review which is a procedural matter). The

condition on purchasing additional coverage has not been altered nor has the obligation of UNUM to provide Prousi with the opportunity to buy additional coverage pursuant to its normal underwriting procedures been impaired. *Bible v. Commonwealth, Dep't of Labor & Indus.,* 548 Pa. 247, 696 A.2d 1149, 1156 (1997) (laws that "impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted" can be applied retroactively). Despite Prousi's argument to the contrary, the statue does not impose new legal burdens or affect Prousi' substantive rights. Thus, I conclude that the amendment to § 441 procedural and is properly applied to pending litigation. *Cruz,* 728 A.2d at 415.

■ Nevertheless, even if the Court applied former § 441, the statute would not operate to make the Participation and Issue limit tables inadmissible. As it existed from 1921 to 1997, former § 441 required that the application as well as the "constitution, by-laws or other rules of the company that form part of the policy or contract between the parties" be attached before any such document could be "received into evidence in any controversy between the parties ... nor shall such application, constitution, by-laws, or other such rules be considered a part of the policy or contract between such parties." [4] Article 3, § 318 of the Insurance Company

---

amended in seventy-six years, giving Pennsylvania courts no opportunity to address the issue directly. Thus, the Court is compelled to analyze the statute under modern principles and the current state of the law in order to determine whether the law is procedural or substantive.

4. The provision, in its entirety, provided:
   All insurance policies, issued by stock or mutual insurance companies or associations doing business in this State, in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on

said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; and, unless so attached and accompanying the policy, no such application, constitution, by-law, or other rules shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, constitution, by-laws, or other rules be considered a part of the policy or contract between the parties.
Art. 3, § 318 of the Insurance Company Law of May 17, 1921, P.L. 682, 40 P.S. § 441.

Law of May 17, 1921, P.L. 682, 40 P.S. § 441 ("former § 441"). In *Lennox v. Greenwich Ins. Co.*, 165 Pa. 575, 30 A. 940, 941 (1895), the Pennsylvania Supreme Court expressed what was has continued to be regarded as the aim of the legislation:

> It is well known that the evil aimed at in this legislation was the custom of insurance companies to put in their blank forms of application long and intricate questions of statements to be answered or made by the applicant, printed usually in very small type, and the relevancy or materiality not always apparent to the inexperienced, and therefore liable to become traps to catch even the innocent unwary. The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and if it contained errors, have them rectified before it became too late.

*see also, Syme v. Bankers Nat'l Life Ins. Co.*, 393 Pa. 600, 144 A.2d 845, 850 (1958) (citing with approval); *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir.1995). In *Syme*, the Pennsylvania Supreme Court explained that former § 441 "was enacted in order to establish uniform rules for determining whether particular promises or statements of an insurance agent are included within the contract between the insurer and the insured." 144 A.2d at 849. As such, former § 441 was a prophylactic measure, designed to prevent "some wrongful concealment by the [insurer] of a condition affecting liability." *Ambridge v. Home Mut. Cas. Co.*, 186 Pa.Super. 192, 142 A.2d 367, 370 (1958). Specifically, the statute prevents an insurance company from having "some secret constitutional provision, by-law, or rule to spring on an insured by way of defense in whole or in part. In

order to be binding on an insured such constitutional provision, by-law, or rule must be attached to the policy." *Id.* Because the statute was passed "in the interest of fair dealing," its provisions should be "strictly enforced." *Syme*, 144 A.2d at 849.

Pennsylvania Supreme Court precedent applying former § 441 and interpreting the scope of "other rules" governs the analysis of this issue. *Employers' Liability Assurance Corp. v. Lebanon Auto Bus Co.*, 360 Pa. 42, 59 A.2d 880, 883–84 (1948). In *Employers'*, the Supreme Court of Pennsylvania held that the statute did not preclude an insurer from offering into evidence the customary short rate tables, referred to in a cancellation clause, but not attached to the policy. Just as Prousi argues here, the plaintiff argued that tables were not admissible because they were "other rules" which were not attached to the policy.

The policy at issue in *Employers'* contained a condition regarding cancellation which provided that if the "named Insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure."[5] 59 A.2d at 882. In holding that the rate table was properly introduced into evidence, the Court reasoned that "[u]nder the familiar principle of ejusdem generis, the words 'or other rules' referred to, necessarily relate to and are restricted to the preceding words application, constitution or by-laws." *Id.* at 883; *see also Ambridge*, 142 A.2d at 370. Because the short rate tables could not be classified as within the scope of the terms application, constitution or by-laws, the failure to attach them did not trigger the statute and make them inadmissible. *Id.* (citing *Sipp*, 142 A. at 223, for proposi-

**5.** This cancellation condition was designed to discourage cancellations for the purpose of shifting from one insurer to another. The policy had been written for one year. The condition, in essence, provided that if the insured shortened the policy period by exercising the cancellation option, it would pay a greater daily average premium than if the insurance continued throughout the entire policy period. The "earned premium" is based upon the total gross earnings of the insured multiplied by a percentage which varied depending on the length of time the policy was in effect and which was established by the short rate table referred to in the policy.

tion that rate tables could not be classified as within terms constitution and by-laws).[6]

Similarly, the Issues and Participation limits in controversy here cannot be classified as being within the scope of the terms application, constitution or by-laws. Because "no application, constitution or by-laws are involved," the statute does not operate to make such tables, if not attached, inadmissible. *Employers'*, 59 A.2d at 882–83; *Sipp*, 142 A. at 223. Moreover, the evil which the legislation sought to eradicate—"some wrongful concealment by the [insurer] of a condition affecting liability"—is not implicated here. *Ambridge*, 142 A.2d at 370; *see also Employers'*, 59 A.2d at 883. On the contrary, the *condition* on the option to buy an additional policy appears plainly in the rider and informs Prousi that his ability to buy an additional policy will be limited by the amount of coverage in force and to the same extent that UNUM limits the amount of insurance it is willing to issue a new applicant. (Def.Exh.B). Former section 441 cannot be understood to preclude the admissibility of documentation of the limits, clearly referenced in the policy, set by normal underwriting procedures and based upon the policyholder's income. *See Employers'*, 59 A.2d at 883–83. Such tables are determined by fixed and definite standards which are not subject to shifting or evasion. *Sipp*, 142 A. at 223. There is no allegation here that the tables themselves are somehow unfair or designed to improperly deny the insured the opportunity to purchase additional coverage.

In sum, I find that the statute, as amended in 1997, applies to this litigation and, therefore, the admissibility of the Participation and Issue limit tables is not precluded. In the alternative, even if former § 441 applied, the tables at issue here do not fall within the scope of the statute and, therefore, former § 441 would likewise not preclude their admission. The Participation and Issue limit tables are admissible in evidence and do govern the parties to the agreement.

### B. The "entire contract" clause

The UNUM policy contains an integration clause which states: "The application and any other papers that are attached are part of this policy. The policy is the complete contract. Statements by agents and brokers are not part of our contract." Prousi asserts that because the Issues and Participation limit tables were not attached to the policy, reliance upon them is a breach of the "entire contract" clause. Prousi further argues that the condition that UNUM "will not issue an amount, with all policies in effect, that would exceed our disability income limits for new applicants ... [as] set by our normal underwriting procedures and apply to your average earned income" is meaningless without the unattached Issues and Participation limit tables and implies that therefore the provision should be invalidated. (Def.Exh.B). In light of the statutory purpose and plain meaning of the provision at issue here as well as Pennsylvania case law, I disagree.[7]

---

**6.** Prousi tries to differentiate *Employers'* on the basis that the short rate tables were approved by the Insurance Commissioner and available to the public. However, the Court's analysis with respect to whether the rate tables were within the scope of the statute did not rely on this fact. The Court merely noted that the tables were approved by the Insurance Commissioner and available to the public in order to establish that the term "short rate" is a "technical term to be given its appropriate meaning by the court." *Employers'*, 59 A.2d at 883–84.

**7.** Prousi relies solely upon a case from Connecticut. *Sanghavi v. Paul Revere Life Ins. Co.*, 214 Conn. 303, 572 A.2d 307, 307–08

(1990). In *Sanghavi*, the plaintiff argued that a similar limitation in which the eligibility of the policyholder for an increase was determined in accordance with the "company's then published income limits" contravened a statutorily prescribed clause stating that all the endorsements and attached papers constitute the entire contract. *Id.* at 306, 572 A.2d 307. The Court reasoned that the purpose of the statute requiring inclusion of the "entire contract" clause was to make sure the policyholder was apprised of all his or her rights and duties under the agreement. The Court held that the failure to attach the "company's then published income limits" contravened the intent of the Connecticut statute. *Id.* at 308, 572 A.2d 307. Prousi argues that be-

In Pennsylvania, "policies delivered or issued for delivery to any person in this Commonwealth" are required by statute to contain an "entire contract" provision. 40 P.S. § 753.[8] This requirement has its roots in the Insurance Company Law of May 17, 1921, which included former § 441. *See* Art. 6, § 618, of the Insurance Company Law of May 17, 1921, P.L. 682. Section 618 of the Insurance Company Law of 1921 ("Section 618") was amended by the Pennsylvania legislature in 1951. *See* Act of May 25, 1951, P.L. 417, § 1 & 2 ("act relating to insurance; amending, revising, and consolidating the law"). Section 618 had originally provided under "standard Policy Provisions" that policies include a provision stating that "1. This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance. . . ." Art. 6, § 618(a) of the Insurance Company Act of 1921, P.L. 682. Section 618 also had a provision regarding changes in the contract: "No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the insurer, and such approval be endorsed hereon." Art. 6,

§ 618(b) of the Insurance Company Act of 1921, P.L. 682. Thus, the amendment to Section 618 passed in 1951 appears to have consolidated these provisions and made them more universally applicable. *See* Act of May 25, 1951, P.L. 417, 40 P.S. 573.

■ Undoubtedly, the Insurance Company Act of 1921, which contained former § 441 and the forerunner of 40 P.S. 753, was enacted "for the benefit and protection of the insured." *Turley v. John Hancock Mut. Life Ins. Co.,* 110 Pa.Super. 578, 168 A. 356, 358 (1933), *aff'd,* 315 Pa. 245, 173 A. 163 (1934). As a general matter, under statutes requiring that the policy contain the entire contract, "the policy, including documents properly incorporated therein, constitutes the sole contract, to the exclusion of all anterior or contemporaneous agreements not contained or expressed in the policy . . . ." 1 COUCH ON INSURANCE § 17:17 (3d Ed.1995–96). In Pennsylvania, courts have explained that a provision regarding the inclusion of the "entire contract" clause in life insurance policies (a similar provision was also contained in the Insurance Company Act of 1921, *see* Art. 4, § 410(d), P.L. 682) was enacted to avoid the uncertainties and doubts with respect to pamphlets or other documents published by the insurer describing the insurance being offered. *Jones v. Metropolitan Life Ins. Co.,* 156 Pa.Super. 156, 39 A.2d 721,

cause UNUM is similarly required by a Pennsylvania statute to incorporate an entire contract clause, the failure to attach the Issues and Participation tables violates the clause. *See* 40 P.S. § 753(A)(1).

The Connecticut Supreme Court, however, was interpreting a Connecticut statute and the intent of the Connecticut legislature in passing the statute. The reasoning of the Connecticut Supreme Court to the situation here is inapplicable because Pennsylvania and Connecticut have different statutory schemes. In Pennsylvania, as part of the overall statutory scheme governing the issuance of insurance policies, the legislature promulgated a separate and distinct statute which requires that applications, by-laws and "other rules" be attached to the policy. *See* former 40 P.S. § 441. Connecticut has no correlating statutory provision. Reliance on a decision premised upon a separate and distinct statutory scheme from a totally unrelated jurisdiction is

therefore misplaced. Prousi's argument must be evaluated and analyzed under the law of Pennsylvania.

**8.** The statute requires inclusion of the following provision (or its equivalent, provided that any different wording is approved by the commissioner and is not less favorable in any respect to the insured):

Entire Contract; Changes: This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No changes in this policy shall be valid until approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions. 40 P.S. § 753(A)(1). Neither party contends that the provision, as worded in the UNUM policy, was not approved by the commissioner, as required, or is less favorable to Prousi.

726 (1944); *Turley,* 168 A. at 358–59. I find that the provision at issue here must have been enacted with a similar rationale, namely, to avoid the uncertainties and doubts with regard to documents purporting to explain the insurance being ·purchased and whether such documents can be relied upon by the insurer to include limitations or conditions not contained in the policy.

With respect to the part of the provision that addresses changes, it must also be noted that Pennsylvania courts have recognized that an entire contract clause which limits the contract to the policy and the application operates to invoke the parol evidence rule. *Mohan v. Union Fidelity Life Ins. Co.,* 207 Pa.Super. 205, 216 A.2d 342, 346–47 (1966); *Good v. Metro. Life Ins. Co.,* 166 Pa.Super. 334, 71 A.2d 805 (1950). In *Mohan,* the plaintiff sought to show that the defendant's agent told him that the policy would compensate for loss of wages as well as hospital expenses. The court held that because the contract included an "entire contract" clause, the parol evidence rule precluded the introduction of such evidence and the plaintiff had to stand on the written policy alone. *Id.* at 346–47.

Applying Pennsylvania's rules of statutory construction, the clause must be construed according to its "common and approved usage" and the letter of the law may not be disregarded or broadened in pursuit of its spirit. *See Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 305 (3d Cir.1995) (interpreting former § 441). As with former § 441, it is essential to use reason when interpreting this clause and to avoid an absurd result. *See id.* Clearly, "[a] policyholder cannot reasonably expect unlimited coverage in the face of an explicit and unambiguous limitation." *Riccio v. American Republic Ins. Co.,* 453 Pa.Super. 364, 683 A.2d 1226, 1231 (1996), *aff'd,* 550 Pa. 254, 705 A.2d 422

(1997). Holding that the entire contract clause invalidated the express condition here would continence an unreasonable, if not absurd, and unintended result.

The plain language of the provision here indicates that it is meant to protect the insured from relying on representations made by an insurance agent by apprising the insured that the policy contains all the terms and provisions of the contract and not necessarily representations made by the. agent. *See Mohan,* 216 A.2d at 346–47. It also provides that additional conditions on coverage will not be imported from other sources, such as pamphlets or other documents. *See Turley,* 168 A. at 358–59. If there are conditions on coverage or the availability of benefits, those conditions will be in the policy. Here, there is no dispute that the application, riders and endorsements were all attached to the policy and constitute the entire contract. The policy had attached a rider that held open the option of purchasing an additional policy in the future. UNUM expressly reserved the right to not issue a new policy, the amount of which, with all policies in force, would exceed its disability limits for new applicants as determined by its normal underwriting procedures. This is not a case where the insurer is attempting to import additional terms or provisions to the policy. Nor does the policy incorporate additional provisions by reference. Although the Issues and Participation limit tables serve to further illuminate the condition under which an additional insurance policy is offered, as stated in the policy, they do not change or modify the policy. They are not riders, exclusions or endorsements which UNUM failed to attach to the policy. Therefore, I find the use of such tables in determining whether or not to underwrite an additional policy, does not offend the legislative purpose or plain language of the entire contract clause.[9]

9. I also note that the facts of this case are at odds with the purpose behind statutory scheme requiring that the policy and any attached documents constitute the entire contract. Here, Prousi is trying to exercise a conditional option to purchase additional coverage. To do so, he is invoking statutes designed to protect insureds *after* they have purchased insurance in an attempt to prevent

## IV. CONCLUSION

Based upon the foregoing analysis, I will grant the motion of UNUM and deny the motion of Prousi. An appropriate Order follows.

### *ORDER*

**AND NOW** this 21st day of December, 1999, upon consideration of the cross motions of defendant UNUM Life Insurance Company of America (Document No. 12) and plaintiff Andrew S. Prousi (Document No. 13) for summary judgment and reply of the parties thereto, as well as the supporting memoranda, pleadings, discovery record, exhibits and affidavits submitted by the parties, having found that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law, and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion of defendant UNUM Life Insurance Company is **GRANTED** and the motion of plaintiff Andrew S. Prousi is **DENIED.**

Judgment is hereby entered in favor of the defendant UNUM Life Insurance Company and against plaintiff Andrew S. Prousi.

This is a final Order.

---

UNUM from utilizing its normal underwriting procedures in evaluating his eligibility for additional insurance *before* the new policy is issued. I recognize that Prousi paid a premium for the option to purchase additional coverage and that Prousi views the ability to purchase an additional policy as a benefit under the existing policy. Nevertheless, the statutory purpose behind the statutes does not resonate with his effort to purchase additional coverage as opposed preventing an insurer from importing conditions which prevent and insured from receiving benefits due under the policy. It is undisputed that UNUM is paying disability benefits under the policy.