Gene RAHMBERG, Appellant,

v.

Penny McLEAN, Appellee.

No. 16708.

Court of Appeals of Texas,
San Antonio.

Sept. 22, 1982.

Rehearing Denied Oct. 19, 1982.

Fred R. Granberry, San Antonio, for appellant.

Robert L. Strickland, Strickland & Dailey, San Antonio, for appellee.

Before ESQUIVEL, CANTU and BASKIN, JJ.

OPINION

BASKIN, Justice.

This is a suit under the Real Estate License Act, Tex.Rev.Civ.Stat.Ann. art. 6573a, § 1 et seq. (Vernon 1982). The sole question for determination is whether a real estate salesman, who was duly licensed when she commenced real estate services which resulted in a sale but who had allowed her real estate license to lapse by nonpayment of dues at the time of execution of the earnest money contract, is statutorily precluded from sharing in the real estate salesman's commission.

Some of the parties were dropped from the suit and the remaining parties were realigned by order of the trial court. As realigned, Penny McLean was the plaintiff, Gene Rahmberg was the defendant, and Compass Enterprises, Inc. (Compass) was named interpleader. McLean was a licensed real estate salesman who left Landmark Realty to take a position in the farm and ranch division of Compass. Subsequently she was successful in obtaining employment in the farm and ranch division of Compass for her friend Rahmberg with whom she had worked at Landmark. McLean had many contacts in the field, especially in and around Maverick County. She often worked the field to develop prospective buyers or sellers. If she found a contact which she thought might be developed into a buyer or seller, she would often contact Rahmberg, and he would in turn work to effect a sale. McLean and Rahmberg agreed that they would split equally any fees or commissions for sales, purchases, rentals, or leases resulting from their cooperative work. This agreement was known and approved by the owner of Compass. McLean and Rahmberg would equally divide between themselves 60% of the broker's fee earned by Compass, and Compass would take the remaining 40%. The jury so found an agreement to split equally the commissions.

In the particular commission at issue, McLean had obtained the original listing

for the sale of the Jack Kiesling Ranch in Maverick County; and the jury so found. The jury also found that Penny McLean obtained the purchaser for the Keisling property, David Schmidt. On two occasions Keisling made offers to sell, but Schmidt declined them. Finally, by earnest money contract dated February 21, 1979, Schmidt agreed to buy and Keisling agreed to sell the subject land. One clause in the earnest money contract agreed that the Seller would pay Compass a professional service fee or commission of 5% of the total sales price for the sale covered by the contract in accordance with a separate written agreement between Seller and Realty World, another real estate broker, dated as of the date of that contract.

Rahmberg claims that he is entitled to receive all of salesman's commission due under the 5% commission earned by Compass. The sole ground for this position is that McLean did not have an active real estate salesman's license at the time of the execution of the earnest money contract for the sale of the Keisling ranch on February 21, 1979. McLean admits that she had no active license at that time, having overlooked sending in her check for $25.00 to renew her license for the year 1979. It is undisputed that she was properly licensed in 1977 and 1978 when the services leading to the sale were commenced and that in November of 1979 she paid her license fee so that she was once more properly licensed in 1980. Under this undisputed evidence and the findings by the jury, the trial court entered judgment in favor of McLean for $13,768.65 which was held in the registry of the court by the interpleader. The Court also found that the interpleader would be entitled to receive $17,550.00 on May 3, 1981, and $16,275.00 on May 3, 1982, and that, by virtue of the jury's verdict, Penny McLean was entitled to receive 30% of those sums when paid, less a six per cent (6%) franchise fee payable to Realty World.

Both parties agree that the courts have consistently required strict compliance with the terms of the Real Estate License Act in determining whether a salesman is entitled to receive compensation for his/her services; and in fact both parties cite us to *Coastal Plains Development Corp. v. Micrea, Inc.,* 572 S.W.2d 285 (Tex.1978) for that proposition.

In 1959, the Real Estate License Act was amended. Prior to that time, Section 13 of the Act provided that in order for a person to maintain an action for the collection of compensation for performance of those acts enumerated in the Act, he had to allege and prove that he was a duly licensed broker or salesman at the time the cause of action arose. By amendment in 1959, that provision was omitted, and the substituted Section 19 made it necessary in order to maintain such an action to allege and prove that the person performing the brokerage services was a duly licensed broker or salesman at the time the alleged services were commenced. Section 20(a) under which this suit is brought says essentially the same thing and sets the time at which the plaintiff must allege and prove that he/she was duly licensed to be at the time the alleged services were commenced.[1]

Rahmberg cites us to the case of *Miers v. Brouse,* 153 Tex. 511, 271 S.W.2d 419 (Tex. 1954) for the proposition we have stated above, that prior to 1959, the salesman need only be licensed at the time the cause of action arose. Rahmberg argues that the 1959 amendment requiring the salesman to be licensed when the services were commenced was in addition to the earlier provision and was added to the Act in order to "strengthen" it. Appellant would have us ignore the statement in *Miers* that "the first maxim of equity is that it will not suffer a right to be without a remedy"; and this we may not do.

---

1.  Section 20(a) of the Act states:
    A person may not bring or maintain an action for the collection of compensation for the performance in this state of an act set forth in Section 2 of this Act without alleging and proving that the person performing the

brokerage services was a duly licensed real estate broker or salesman at the time the alleged services were commenced, or was a duly licensed attorney at law in this state or in any other state.

We cannot accept that interpretation of the Legislature's action. The current section 20(a) requires a person seeking to collect compensation for the performance of any of certain enumerated acts to allege and prove that he was duly licensed *at the time the alleged services were commenced.* Rahmberg would require allegation and proof of a license at the time the alleged services were commenced *and* at all times thereafter until the cause of action for recovery of the commission arose. Rahmberg would have us apply a rule contrary to the consistent holdings by our courts that Section 20(a) of art. 6573a must be strictly applied.

The applicable rule was clearly enunciated in *Anderson v. Republic National Life Insurance Co.,* 623 S.W.2d 162, 165 (Tex. App.—Fort Worth 1981, no writ), as follows:

> The service for which appellant was to be compensated was his introduction, to appellees, of a purchaser. In our opinion, appellant "commenced" that service when he performed the first act of that service, *Terry v. Texas Co.,* 228 S.W. 1019 (Tex. Civ.App.—Fort Worth 1920, no writ). The first act was performed when appellant introduced Mr. Horne to the appellees in the fall of 1975. Section 20 of art. 6573a was then in effect.

Here appellee McLean commenced her service when she introduced Jack Keisling as a prospective seller. At that time she was a licensed real estate salesman as a matter of law, and the jury determined all of the facts to entitle her to receive her agreed allocable share of the real estate sales commission.

Appellant Rahmberg says that even if we should accept McLean's argument "that the only time a license is required is at the commencement of the transaction, appellee still could not collect the fee from the broker." To reach this novel reasoning, appellant points to other sections of the Real Estate License Act which, he says, will, notwithstanding our conclusions heretofore expressed, prevent appellee from sharing in the sales commission.

These are:

Section 14(a) which makes it unlawful for a licensed broker to ... compensate ... a person for performing an act enumerated in the definition of real estate broker ... if he is not a ... licensed salesman ....

Section 1(b) which makes it unlawful for a person to act in the capacity of, engage in the business of ... a real estate salesman without first obtaining a real estate license .... It is unlawful for a licensed salesman to act as a real estate agent unless he is at that time, associated with and acting for a licensed real estate broker.

Section 1(d) which provides that no real estate salesman shall accept compensation for real estate sales from any person other than the broker under whom he is at the time licensed.

Section 4 which makes the commission of a single enumerated act by a person required to be licensed but not so licensed a violation of the Act.

Section 9(a) which describes when a license shall be issued and how long it shall remain in force, including payment of the annual certification fee.

Section 15(4)(F) which provides for criminal liability to a broker who pays a fee or commission to one not licensed as a broker or salesman.

Appellant is directly asking us to hold that we should disregard our holding under Section 20(a) because of conflicting sections in the Act. We must observe the rules of statutory construction by which we are bound before addressing these individual arguments by appellant.

We are instructed by the Legislature itself that in seeking to interpret an act of the Legislature, we shall look diligently for the intention of the Legislature. Tex.Rev. Civ.Stat.Ann. art. 10 (Vernon 1969). The courts have laid down some rules which help us to ascertain legislative intent.

Our Supreme Court instructs us, in *Black v. American Bankers Insurance Co.,* 478 S.W.2d 434, 437 (Tex.1972), as follows:

It is a cardinal rule of statutory construction that all sections, words and phrases of an entire act must be considered together; every provision should be construed with every other portion to produce a harmonious whole; and one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such construction if standing alone. *Labor Board v. Lion Oil Co.,* 352 U.S. 282 [77 S.Ct. 330, 1 L.Ed.2d 331] (1957); *Martin v. Sheppard,* 129 Tex. 110, 102 S.W.2d 1036 (1937); *Spence v. Fenchler,* 107 Tex. 443, 180 S.W. 597 (1915); *Lufkin v. City of Galveston,* 63 Tex. 437 (1885). To the same effect is the opinion in *City of Fort Worth v. Bostick,* 479 S.W.2d 350, 352 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.) which holds that all parts of a legislative act should be given effect and reconciled if possible. We must search for ways, if there is conflict in the parts of a statute, to reconcile and harmonize them so as to give full force and effect to each.

The Court of Criminal Appeals, in *Wade v. State,* 572 S.W.2d 533, 535 (Tex.Cr.App. 1978) urges that a rational and sensible construction be favored, and we should not ascribe to the Legislature an intention to do an unreasonable thing if the statute is susceptible of a construction that will prevent such a result.

Even more specifically, "When a new section has been introduced into a law, it must be construed in view of the original statute as it stands after the amendment is introduced, and it and all the sections of the old law must be regarded as a harmonious whole, all sections mutually acting upon each other." *Schlichting v. Texas State Board of Medical Examiners,* 158 Tex. 279, 310 S.W.2d 557, 563 (Tex.1958); *Nelms v. Gulf Coast State Bank,* 516 S.W.2d 421, 424 (Tex.Civ.App.—Houston [1st Dist.] 1974), *aff'd,* 525 S.W.2d 866 (Tex.1975).

Appellant's final argument is an invitation to construe provisions of the Act so as to reach conflicting versions other than a harmonious whole, disaccord rather than reconciliation. We decline the invitation and overrule the argument, finding it unnecessary to address each putatively conflicting section separately.

Appellant's sole point of error is without merit, and the judgment of the trial court is affirmed.