## James Lyle, Appellant, v. J. W. Shay et al.

*Partnership—Sale of interest—Rescission—Fraud.*

A partner who has sold his interest in the partnership to his copartners cannot retain and appropriate the proceeds of the sale after he claims to have discovered fraud and files a bill for the cancellation of the contract. It is his first duty to return the consideration, and thus put the other parties in statu quo.

Argued Nov. 6, 1894. Appeal, No. 250, Oct. T., 1894, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1893, No. 278, in favor of defendant on bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill for account and for cancellation of sale of partnership interest.

The case was referred to L. L. Davis, Esq., as master, who reported the facts as follows:

"In the month of December, 1891, James Lyle, the plaintiff, and J. W. Shay, James Hall, H. A. Kelley and John Smith, the defendants, entered into a copartnership under the name of Shay & Co., for the purpose of developing certain oil territory situate at or near Sistersville, in Tyler county, West Virginia. The respective interests of the copartners were as follows: The plaintiff, James Lyle, one eighth; the defendants, J. W. Shay, one fourth; James Hall, one fourth; H. A. Kelley, one fourth and John Smith, one eighth. At the time of the organization of the said copartnership, no cash was contributed by any of the partners.

" The respective interests of the several partners were based on contribution of personal property: ·J. W. Shay, H. A. Kelley, and James Lyle were members of a partnership called Shay, Kelley & Lyle, which was organized in September, 1891, in

Washington county, Pennsylvania, for the purpose of drilling wells for gas or oil by contract; the property of Shay, Kelley & Lyle, consisting of tools and machinery, was taken to Sistersville and turned over to and made the basis of the respective interests of J. W. Shay, H. A. Kelley and James Lyle in the partnership of Shay & Co. James Hall contributed a set of drilling tools as the basis of his interest, and John Smith turned over to Shay & Co. certain oil leases, which he had taken up at Sistersville, as the basis of his interest.

" The leases that were held and considered the property of Shay & Co. consisted of the Rome lease, thirty acres; Stocking lease, four acres; a seven-acre tract; Woods lease; and two town lots of about ten acres, in which Shay & Co. had a half interest.

" On these leases Shay & Co. drilled ten wells, all producing, in eight of which wells Shay & Co. had the entire interest, and in two of which a one-half interest. Shay & Co., during the existence of the partnership, also drilled some eleven wells by contract for other parties.

" Shay & Co. kept a warehouse, for oil well supplies, for the use of the partnership, and incidentally sold considerable supplies to other companies, in which J. W. Shay and others were interested. Such sales were made as a matter of accommodation and the same prices charged the purchasers as were paid by Shay & Co.

" The above mentioned ten producing wells, the drilling of eleven wells for others by contract, and the incidentally selling of oil well supplies, as above stated, comprise the entire business operations of Shay & Co.

" J. W. Shay, by the consent of the other partners, became the business manager of Shay & Co., and advanced the necessary money to carry on its business until the wells drilled became productive. J. W. Shay kept the books of Shay & Co. until June 1, 1892, when H. H. Davis, a book-keeper, was employed.

" All the partners except James Lyle, the plaintiff, who was employed as secretary for the Jefferson Gas Co., contributed time and labor to the partnership of Shay & Co. and received no salaries therefor.

" From April or May, 1892, S. J. Kennedy was employed by Shay & Co., as superintendent or foreman of the wells of Shay

& Co., and had charge of the warehouse and the distribution of all supplies and material to the wells of Shay & Co., and made reports to the book-keeper of the supplies and material sold to other companies.

" The firm of Shay & Co. continued business as originally organized until Dec. 10, 1892, when James Lyle, the plaintiff, sold all his interest in the partnership of Shay & Co., including therein that of Shay, Kelley & Lyle, to J. W. Shay, one of the defendants, for the sum of $1,689.30.

" On Dec. 10, 1892, a statement of the accounts of the plaintiff from the books of Shay & Co. and Shay, Kelley & Lyle and some few debits and credits not entered, showed the plaintiff indebted to Shay & Co. in the sum of $810.70.

" J. W. Shay estimated the partnership assets of Shay & Co., including therein that of Shay, Kelley & Lyle, to be worth $20,000, and James Lyle's interest of one eighth at $2,500. Shay ·offered to purchase on that valuation, deducting therefrom the said indebtedness of Lyle ; Lyle accepted the offer and gave a receipt for $500, as part payment, stating therein, ' leaving a balance due me of $1,189.30, payable on completion of three wells now drilling for the Jefferson Gas Co., one third to be paid on the completion of each well.'

" Plaintiff received, Dec. 10, 1892, a check for the $500, the first payment, and had it certified ; he waited until the said three wells of the Jefferson Gas Co. were completed, and employed an attorney to demand payment of the balance of $1,189.30, which he received by check and also had certified, which checks he still held June 26, 1893, the date of his testimony in this case, and which later on he had cashed.

" The master further finds that, on Jan. 28, 1893, before the filing of plaintiff's bill in this case, Shay & Co. sold out all the partnership property, excepting $3,000 worth of drilling tools, to John J. Carter, for the sum of $27,000, and that between the date of the sale of the interest of Lyle to Shay and the date of the sale of the property of Shay & Co. to J. J. Carter, oil and oil property had materially advanced in price, owing to the fact that the Mellon Pipe Line Co., a competing pipe line company to that of the Standard Oil Co., the only pipe line company in the territory at that date, had become an established fact.

" The master specially finds that no evidence has been pro·

duced sustaining any charge of fraud in the management of the partnership affairs, or funds of Shay & Co., on the part of J. W. Shay, as alleged in plaintiff's bill, on which he bases his right to a decree in his favor in this case."

The following exceptions, among others, were filed:

" 3. The master erred in finding as a fact that all the partners of Shay & Co., except James Lyle, the plaintiff, contributed time and labor to the partnership of Shay & Co., and received no remuneration therefor; the fact being, and which the master should have found, that large sums of money have been claimed by J. W. Shay as paid out, not only for J. W. Shay himself, but for all the other members of the partnership except James Lyle, the plaintiff, for which no account or itemized statement has been furnished, and J. W. Shay should be charged with the same." [8]

" 7. The master erred in finding as a fact that James Lyle, having inspected the books of Shay & Co., understood the situation of the accounts of said firm and was able to judge for himself." [3]

" 8. The master erred in holding as a matter of law that J. W. Shay, the defendant, was not bound to make a full disclosure of the business of said partnership to Jas. Lyle, his partner, and for whom he was acting as trustee at the time he purchased the interest of Jas. Lyle, Dec. 10, 1892." [4]

" 10. The master erred in recommending that the bill be dismissed and plaintiff pay all the costs of the case." [5]

" 11. The master erred in not directing that the fraudulent sale of the interest of James Lyle to J. W. Shay be canceled, and the said Lyle reinstated to all his original rights in the firm of Shay & Co." [6]

" 12. The master erred in not directing J. W. Shay to fully account for all the assets, partnership interests and rights of Jas. Lyle in the firm of J. W. Shay & Co. and Shay, Kelley & Lyle, and in not directing that the said Shay be compelled to account fully to plaintiff for his share of all partnership rights, assets and interests of, in and to the firm of Shay & Co.; and also in not directing that J. W. Shay pay all the costs of this proceeding." [7]

The court overruled the exceptions in the following opinion:

" [We have heard this case at unusual length, and on consid-

eration we are not only unable to find that the master is wrong in his findings, but we agree that the testimony shows that in the sale by plaintiff to J. W. Shay of his interest in the firm of Shay & Co. there was no fraud, no concealment of the facts from the plaintiff, and that no serious mistakes were made in the books of the firm on the basis of which the settlement and sale was made.] " [1]

A decree was entered dismissing the bill. [2]

*Errors assigned* were (1) opinion; (2) decree dismissing bill; (3–8) dismissal of exceptions; quoting them respectively.

*James Fitzsimmons, Frank M. McKelvey* with him, for appellant, cited : 1 Collyer on Partnership, §§ 182, 298; 1 Story's Equity, §§ 468, 523; Pitt v. Cholmondeley, 2 Ves. Sr. 565; Rehill v. McTague, 114 Pa. 82; Oil Co. v. Densmore, 64 Pa. 43; 1 Perry on Trusts, 252; Ewell's Evans on Agency, 254, 371; Bisph. Eq., 5th ed. 92; Hill on Trustees, 159; Anderson v. Lemon, 4 Seld. 236; Cushing v. Danforth, 76 Me. 114; Roby v. Colehour, 135 Ill. 300; Lewin, Trusts, Blackstone ed., 396; Fisher v. Bishop, 108 N. Y. 25; Ford v. Harrington, 16 N. Y. 285; Kutz's Ap., 100 Pa. 75; Sproull's Ap., 71 Pa. 137; Phillips' Ap., 68 Pa. 130; Pomeroy v. Benton, 57 Mo. 531; Crawshay v. Collins, 15 Ves. 218; Brown v. Litton, 1 P. Wms. 140; Stoughton v. Lynch, 1 Johns. Ch. 467; Kelley v. Greenleaf, 3 Story, 93.

*Thomas Patterson* and *A. M. Todd, James A. Wiley* with them, for appellee, cited : Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsay, 67 Pa. 217; Leaming v. Wise, 73 Pa. 173, Geddes's Ap., 80 Pa. 442.

PER CURIAM, Jan. 7, 1895 :

The third to eighth specifications inclusive allege error in dismissing plaintiff's exceptions recited therein respectively. An examination of the learned master's report, in connection with the bill, answer and proofs on which it is based, has satisfied us that neither of said exceptions should have been sustained. The findings of fact, referred to in two of said specifications, appear to have been warranted by the evidence, and the con-

clusions of law complained of in the other three are legitimate deductions from the properly ascertained facts. We fully concur in the conclusion announced by the learned judge of the common pleas, in that part of his opinion covered by the first specification, wherein he says : " We are not only unable to find that the master is wrong in his findings, but we agree that the testimony shows that in the sale by plaintiff to Shay of his interest in the firm of Shay & Co., there was no fraud, no concealment of the facts from the plaintiff, and that no serious mistakes were made in the books of the firm on the basis of which the sale was made."

The plaintiff appears to have been disposed to hold on to what he had received until he succeeded in doing better. The net price agreed upon for his interest was $1,689.30. For $500 of this he received his vendee's check at the time. The residue was to be paid when three wells, then being drilled for the Jefferson Company, were completed. When that occurred, plaintiff, through his attorney, demanded payment, and a check for $1,189.30 was sent him. This, as well as the former check, he had certified, and retained possession of both until after the hearing in this case had commenced and then he had them cashed, and thereafter continued his efforts to realize more. If there had been any such proof of concealment and fraud in effecting the sale as would have justified him in rescinding, he should have prepared the way for so doing by at least offering to put his vendee in statu quo by refunding the consideration money. There appears to be nothing in the circumstances of this case to take it out of the rule recognized in Pearsoll v. Chapin, 44 Pa. 9 ; Negley v. Lindsay, 67 Pa. 217 ; Leaming v. Wise, 73 Pa. 173, and others in the same line. But, as we have seen, the plaintiff was unable to advance his case far enough to make the questions of tender, repayment, etc., important factors.

: Finding no error in the decree, or in the proceedings leading up thereto, it is affirmed, and the appeal is dismissed with costs to be paid by appellant.