

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-1995

# Horowitz v Federal Kemper

Precedential or Non-Precedential:

Docket 94-1900

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Horowitz v Federal Kemper" (1995). *1995 Decisions.* Paper 159.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/159

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Nos. 94-1900 and 94-1901
_____

DONA W. HOROWITZ, individually and as co-executrix
of the estate of LEONARD N. HOROWITZ, deceased;
ALFRED CAMNER, co-executor of the estate of
LEONARD N. HOROWITZ, deceased

vs.

FEDERAL KEMPER LIFE ASSURANCE COMPANY

Appellant in No. 94-1900


DONA W. HOROWITZ, individually and as co-executrix
of the estate of LEONARD N. HOROWITZ, deceased;
ALFRED CAMNER, co-executor of the estate of
LEONARD N. HOROWITZ, deceased

Appellants in No. 94-1901

vs.

FEDERAL KEMPER LIFE ASSURANCE COMPANY
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 93-cv-00192)
_____

Argued
May 1, 1995
Before: SLOVITER, Chief Judge,
MANSMANN and ALITO, Circuit Judges.

(Filed  June 7, 1995)
_____

Dean F. Murtagh, Esquire (Argued)
John P. Shusted, Esquire
German, Gallagher & Murtagh
200 South Broad Street
5th Floor

Philadelphia, PA 19102

Counsel for Appellant in No. 94-1900
Counsel for Appellee in No. 94-1901

James E. Beasley, Esquire
Barbara R. Axelrod, Esquire (Argued)
Beasley, Casey, Colleran,
Erbstein, Thistle & Kline
1125 Walnut Street
Philadelphia, PA 19107

Counsel for Cross-Appellants in No. 94-1901
Counsel for Appellees in No. 94-1900

Rita M. Theisen, Esquire
LeBoeuf, Lamb, Grene & MacRae
1875 Connecticut Avenue, N.W.
Suite 1200
Washington, DC 10009-5728

Of Counsel:

Phillip E. Stano, Esquire
Richard E. Barnsback, Esquire
American Council of Life Insurance
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Counsel for Amicus-appellant in No. 94-1900
Counsel for Amicus-appellee in No. 94-1901

———————

OPINION OF THE COURT

———————

MANSMANN, Circuit Judge.

In this diversity case, the plaintiffs asserted that Federal Kemper Life Assurance Company's refusal to pay the proceeds of a life insurance policy to plaintiff Dona W. Horowitz was a breach of contract and violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. § 201-1 et seq., and Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371.

We are called upon to determine whether Federal Kemper "attached" an application amendment to the policy within the meaning of section 441 of Pennsylvania's Insurance Company Law of 1921, 40 Pa. C.S.A. § 441, and may, therefore, proceed with a fraud defense against the plaintiffs' breach of contract claim and a counterclaim for rescission based on alleged material misrepresentations and omissions in the policy application and the amendment. We must also determine whether Federal Kemper's conduct was in contravention of Pennsylvania's unfair trade practices and bad faith statutes.

We find that Federal Kemper's use of a binder with pockets or sleeves to contain the policy, application and amendment satisfied the attachment requirement of section 441, and that Federal Kemper reasonably refused payment. We will therefore vacate the district court's grant of summary judgment to the plaintiffs on their breach of contract claim and remand for further proceedings on this issue. In addition, we will affirm the district court's grant of summary judgment in Federal Kemper's favor on the plaintiffs' unfair trade practices and bad faith claims.

## I.

We begin our analysis by reviewing the evidence presented in this case. With one critical exception, the

following material facts surrounding Federal Kemper's refusal to pay Dona Horowitz's claim are not in dispute.[1]

On September 26, 1991, Mrs. Horowitz and her husband, Dr. Leonard N. Horowitz, met with Frederick Raffetto, an independent insurance agent, and completed an application for a $1 million Federal Kemper life insurance policy, naming Dr. Horowitz the proposed insured and Mrs. Horowitz, the applicant, owner and primary beneficiary. Both Dr. and Mrs. Horowitz signed Part B of the application, promising to inform Federal Kemper of "any change in the health or habits of the Proposed Insured that occurr[ed] after completing [the] application but before the Policy [was] delivered . . . and the first premium [was] paid."

On October 3, 1991, at Federal Kemper's request, Dr. Horowitz was examined by Carol Coady, a registered nurse. After taking urine and blood samples and checking Dr. Horowitz's vital signs, nurse Coady asked Dr. Horowitz a series of questions regarding his health and medical history and recorded the answers

---

[1]. Our standard of review upon the grant of summary judgment is plenary. Commercial Union Ins. Co. v. Bituminous Casualty Corp., 851 F.2d 98, 100 (3d Cir. 1988). On review, an appellate court is required to apply the same test the district court should have used initially. Id. Summary judgment is only appropriate where there is no genuine issue of material fact for the jury to decide. Fed. R. Civ. P. 56(c). Facts that could alter the outcome are "material", see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and disputes are "genuine" if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is inappropriate when a case will turn on credibility determinations. See Liberty Lobby, 477 U.S. at 255.

he gave on Part F of the policy application.  When asked whether he had ever received treatment for "[an] [u]lcer, colitis, hepatitis, pancreatitis or other disorder of the esophagus, stomach, intestines, liver or pancreas", Dr. Horowitz reported that he had been treated for lactose intolerance and a spastic colon in 1985 and as a result, avoided the ingestion of milk products and took "Metamucil" every so often.  In response to inquiries regarding consultations with physicians or other medical practitioners and the performance of electrocardiograms, blood studies or other medical tests within the last five years, Dr. Horowitz stated that he consulted with his family doctor on a yearly basis for a routine checkup, electrocardiogram and blood analysis, and identified Dr. Bradley Fenton as his personal physician, whom he had last visited in August, 1991.  Dr. Horowitz did not disclose, however, that he had seen Dr. Anthony J. DiMarino, Jr., a gastroenterologist, on several occasions beginning in 1986 and had been examined by Dr. DiMarino most recently in August, 1991, or that he had undergone a series of small bowel studies, blood tests for anemia, and tests for vertigo within the last five years, and two colonoscopies, one in 1987 and another on August 8, 1991.

Approximately one month later, in November of 1991, Dr. Horowitz complained to Dr. DiMarino of pain when swallowing.  On December 4, 1991, Dr. Horowitz underwent a CT scan and an endoscopy with biopsy, and on December 5, 1991, was diagnosed as having terminal adenocarcinoma of the stomach.  On December 6, 1991, Dr. and Mrs. Horowitz consulted a specialist and were told

that Dr. Horowitz had approximately six months to live.  During the following week, Dr. Horowitz obtained three additional medical opinions, all confirming the original diagnosis of terminal adenocarcinoma.  On December 16, 1991, Dr. Horowitz had a catheter surgically inserted for the administration of chemotherapy, and on the morning of December 20, 1991, chemotherapy treatment was begun.

After learning of his condition and prognosis, Dr. Horowitz informed his personal attorney that he had previously applied to Federal Kemper for a life insurance policy and of the change in his health.  The attorney advised Dr. Horowitz to take whatever steps were necessary to secure delivery of the policy and reassured him that any disputes that might arise with Federal Kemper would be resolved in court.

On December 20, 1991, in the afternoon, Mr. Raffetto met with Dr. and Mrs. Horowitz and delivered the Federal Kemper life insurance policy which had been issued on December 3, 1991. Dr. Horowitz, in turn, paid the first premium.  During Mr. Raffetto's visit, Dr. and Mrs. Horowitz read and executed an amendment of application which provided in pertinent part:

> The above noted application of Federal Kemper
> Life Assurance Company dated September 26,
> 1991 is amended as follows:
>
> THE REPRESENTATIONS MADE IN THE APPLICATION
> ARE STILL VALID AS OF THE DATE IN THIS
> AMENDMENT, AND THE PROPOSED INSURED HAS NOT
> HAD ANY ILLNESS OR INJURY, AND HAS NOT
> CONSULTED, OR RECEIVED MEDICAL ADVICE OR
> TREATMENT FROM, ANY PHYSICIAN OR OTHER
> MEDICAL PRACTITIONER SINCE THE DATE OF
> APPLICATION EXCEPT AS FOLLOWS:

It is agreed that this amendment is part of the application and of the policy issued, and it will be binding on any person who will have any interest under the policy. This amendment, and the policy, will not take effect until signed as required below. It is agreed that no coverage is in effect if any changes are made to the above statements in this form.

Neither Dr. Horowitz nor his wife, however, informed Mr. Raffetto of Dr. Horowitz's terminal illness, the treatment he was undergoing or of the several medical opinions he had obtained since September 26, 1991 regarding his condition.

Although the parties agree that Mr. Raffetto unstapled one original amendment from the policy and presented it to Dr. and Mrs. Horowitz to read and sign, they dispute whether Mr. Raffetto actually delivered it. Mrs. Horowitz contends that she never took possession of the signed amendment, and one of Dr. Horowitz's attorneys executed an affidavit stating that the Federal Kemper policy he examined following Dr. Horowitz's death did not include the amendment. Mr. Raffetto, on the other hand, maintains that on December 20, 1991, he unstapled two original amendments from the policy, saw to it that Dr. and Mrs. Horowitz read and signed both originals, retained one original for Federal Kemper's files, placed the second original inside a sleeve in the pocket binder[2] which contained the policy and application, and gave the binder to Dr. Horowitz.

---

[2]. The plaintiffs describe the pocket binder as a "plastic cover" with a "sleeve" or "pocket" in which papers could be placed. For the sake of consistency only, we will refer to the item as a binder.

Dr. Horowitz spoke again to his attorney after taking delivery of the Federal Kemper policy and voiced concern over signing the amendment in light of his illness. Counsel directed Dr. Horowitz to send him the policy and reiterated that litigation would resolve future disputes.

Dr. Horowitz died on May 21, 1992. Shortly after Dr. Horowitz's death, Mrs. Horowitz submitted a claim to Federal Kemper for the proceeds of the policy. By a letter dated September 25, 1992, Federal Kemper refused Mrs. Horowitz's claim, declaring the policy null and void due to Dr. and Mrs. Horowitz's failure to disclose the adenocarcinoma as, according to the insurer, Part B of the application and the application amendment required. Federal Kemper also enclosed all premiums that had been paid on the policy and reserved its right to raise other defenses to Mrs. Horowitz's claim.

On December 16, 1992, Mrs. Horowitz, individually and as co-executrix of Dr. Horowitz's estate, and Alfred Camner, the estate's co-executor, filed a three count complaint in the Court of Common Pleas, Montgomery County, Pennsylvania, alleging that Federal Kemper violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. § 201-1 et seq. (Count I), acted in bad faith in violation of 42 Pa. C.S.A. § 8371 (Count II), and breached the parties' insurance contract (Count III). Federal Kemper removed the case to the United States District Court for the Eastern District of Pennsylvania on January 14, 1993. In response to the plaintiffs' complaint, Federal Kemper raised fraud as a defense and also asserted a counterclaim for

rescission on the ground that Dr. and Mrs. Horowitz had made material misrepresentations in the policy application and the application amendment.

On October 8, 1993, the parties filed cross-motions for summary judgment. On August 30, 1994, the district court granted the plaintiffs' motion on Count III, the breach of contract claim, and entered judgment in their favor for $1 million. The court concluded that even if Mr. Raffetto's version of events regarding delivery of the policy, application and amendment were true,[3] Federal Kemper was barred as a matter of law from asserting a fraud defense based on alleged misrepresentations in the application and amendment because of "Mr. Raffetto's undisputed failure to reattach the [December 20, 1991] amendment to the policy at the time of delivery . . ." as required under section 441 of Pennsylvania's Insurance Company Law of 1921, 40 Pa. C.S.A. § 441. Horowitz v. Federal Kemper Assurance Co., 861 F. Supp. 1252, 1258 (E.D. Pa. 1994).[4] Rejecting Federal Kemper's

_____

[3]. On summary judgment, where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be taken as true. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, ___ U.S. ___, 113 S. Ct. 1262 (1993).

[4]. On summary judgment, Federal Kemper's fraud defense and its counterclaim for rescission were limited to misrepresentations allegedly made in Parts B and F of the application and in the application amendment. Because the court ruled in the plaintiffs' favor on their breach of contract claim, it did not reach their argument that under 40 Pa. C.S.A. § 511(a), Federal Kemper was precluded by the results of its October 3, 1991 medical examination of Dr. Horowitz from defending on the basis of fraud; nor did it reach Federal Kemper's counterclaim for rescission, concluding that the insurer's "failure to attach the December 20 amendment to the

argument that section 441 was satisfied when Mr. Raffetto placed a copy of the amendment inside the sleeve of a binder that also contained the policy and the application, the court held that the rule that has emerged from the two leading cases, <u>Sandberg v. Metropolitan Life Ins. Co.</u>, 342 Pa. 326, 20 A.2d 230 (1941),[5] and <u>Frost v. Metropolitan Life Ins. Co.</u>, 337 Pa. 537, 12 A.2d 309 (1940), is that "if an insurance company fails to physically attach the application (or any amendments) to the policy at the time it is delivered, it is barred from asserting as a defense any fraudulent misrepresentations contained in the application or amendments". <u>Horowitz</u>, 861 F. Supp. at 1258. As to the plaintiffs' unfair trade practices and bad faith claims, however, the district court granted summary judgment in the defendant's favor, finding that Federal Kemper's refusal to pay Mrs. Horowitz's claim was neither actionable as malfeasance nor taken in bad faith. <u>Id.</u> at 1261-62. On August 30, 1994, Federal

(..continued)
policy prohibits it from asserting as a fraud defense any of the misrepresentations contained in the amendment, Part B of the application (completed on September 26, 1991), or Part F of the application (completed on October 3, 1991)." <u>Horowitz v. Federal Kemper Assurance Co.</u>, 861 F. Supp. 1252, 1261 n.9 (E.D. Pa. 1994).

[5]. In <u>Sandberg v. Metropolitan Life Ins. Co.</u>, 342 Pa. 326, 20 A.2d 230 (1941), an application was attached to an insurance policy, but an amendment to the application was not. The Pennsylvania Supreme Court held that since the amendment was not attached as required by section 441, both the application and the amendment had to be excluded from evidence. 342 Pa. at 329, 20 A.2d at 231. The meaning of "attach" as used in section 441 was not an issue in the case.

Kemper filed this appeal, and the plaintiffs' cross-appeal followed.  The parties agree that Pennsylvania law applies.[6]

## II.

For Federal Kemper to void the insurance policy on the basis of fraud, Pennsylvania law requires that it must show (1) that Dr. or Mrs. Horowitz's representations in the policy application and the application amendment were false, (2) that Dr. or Mrs. Horowitz knew their representations were false or made them in bad faith, and (3) that the representations were material to the risk insured.  Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 148 (3d Cir. 1993), citing Shafer v. John Hancock Mut. Life Ins. Co., 410 Pa. 394, 189 A.2d 234, 236 (1963).

Section 441 of Pennsylvania's Insurance Company Law of 1921, however, bars an insurer from using certain documents,

---

[6].	When a federal district court exercises diversity jurisdiction, it must apply the substantive law as decided by the highest court of the state whose law governs the action. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Commercial Union, 851 F.2d at 100.  When the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue. Borman v. Raymark Indus., Inc., 960 F.2d 327, 331 (3d Cir. 1992).  Although not dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise. See Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991). Our review of the district court's prediction and application of state law is plenary. Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992).

including a policy application, as evidence of fraud against an insured unless they are "attached and accompany[] the policy":

> All insurance policies . . . in which the application of the insured, the constitution, by-laws or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; and, unless so attached and accompanying the policy, no such application, constitution or by-laws, or other rules shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, constitution, by-laws, or other rules be considered a part of the policy or contract between such parties.

40 Pa. C.S.A. § 441.

A.

The Pennsylvania courts have often stated that section 441 was passed "in the interest of fair dealing" and its provisions should be "strictly enforced." Syme v. Bankers Nat. Life Ins. Co., 393 Pa. 600, 609, 144 A.2d 845, 850 (1958); Ellis v. Metropolitan Life Ins. Co., 228 Pa. 230, 231, 77 A. 460 (1910). Enacted primarily for the protection of insureds, section 441 establishes uniform rules for determining whether particular promises or statements are included within the contract between the insurer and the insured. Frost, 337 Pa. at 541, 12 A.2d at 309. In Lenox v. Greenwich Ins. Co., 165 Pa.

575, 577, 30 A. 940, 941 (1895), the Pennsylvania Supreme Court

expressed what is still regarded as the aim of the statute:

> It is well known that the evil aimed at in this legislation was the custom of insurance companies to put in their blank forms of application long and intricate questions or statements to be answered or made by the applicant, printed usually in very small type, and the relevancy or materiality not always apparent to the inexperienced, and therefore liable to become traps to catch even the innocent unwary. The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and if it contained errors, have them rectified before it became too late.

Applying Pennsylvania's rules of statutory construction, the Pennsylvania courts have directed that the words and phrases of section 441 be construed according to their "common and approved usage" and instructed that the statute's letter may not be disregarded or broadened to pursue its spirit. Frost, 337 Pa. at 540, 12 A.2d at 310. The courts have also emphasized, however, that it is essential to use reason when interpreting section 441 and to avoid an absurd result. Ross v. Metropolitan Life Ins. Co., 403 Pa. 135, 142-43, 169 A.2d 74, 78 (1961). Thus, in Ross v. Metropolitan Life, after considering the language and purpose of section 441, the Pennsylvania Supreme Court determined that the statutory requirement that a "correct" copy of an application be attached to a policy does not mean that "trivial and immaterial" errors in the copy which do not mislead the insured render the application inadmissible, id., and in Prudential Ins. Co. v. Pagano, 407 Pa. 473, 474-75, 181 A.2d 319,

320-21 (1962), held that section 441 was satisfied even though the insurer attached to the policy only one of two identical application sections the insured had completed.

The case of Frost v. Metropolitan Life Ins. Co., 337 Pa. 537, 12 A.2d 309 (1940), where the Pennsylvania Supreme Court construed the meaning of section 441's attachment requirement, is singularly on point. There, the plaintiff commenced a breach of contract action to recover the proceeds of a $5,000 policy issued by Metropolitan Life to one Emerson E. Weiser. Attached to the policy upon which the plaintiff brought suit were an instrument referred to as an "Accidental Death Benefit" (Exhibit B) and a photostatic copy of Weiser's application for a previously issued $10,000 policy (Exhibit C).[7] While the plaintiff asserted that Exhibits B and C were the only papers attached to the policy, Metropolitan Life alleged that an additional document which affirmed the application for the $10,000 policy and also amended it to make it an application for the $5,000 policy (Exhibit A) was "attached to the policy `by placing the same in said policy' and delivering the policy `with the said amendment and affirmance duly executed, folded therein, to the insured.'" 337 Pa. at 538, 12 A.2d at 310. Metropolitan Life further alleged by way of a defense to the plaintiff's claim that Weiser had given false answers in Exhibit C, the application, but conceded that unless

---

[7]. The court stated that Exhibits B and C were attached to the policy; it did not, however, describe the means of attachment. Frost v. Metropolitan Life Ins. Co., 337 Pa. 537, 538, 12 A.2d 309, 310 (1940).

Exhibit A, the additional paper, had been "attached" to the policy as required by section 441, it could not introduce the application as proof of Weiser's fraud.  Id.

Based on the dictionary definition of "attach":  "`to bind, fasten, tie or connect; to make fast or join, as to attach with a string'", the Pennsylvania Supreme Court found against Metropolitan Life, refusing to "distort" the plain meaning of attach or to excuse the insurer's "gross neglect" to follow the requirements of section 441:

> In view of this approved definition by the courts and in view of the rules laid down by the Legislature and by the courts in connection with the interpretation of words and phrases, would it not require that the plain meaning of the word "attached" be distorted in order to find that this Defendant's Exhibit A had been attached to the policy by merely folding it and placing it in the policy? . . .  `We see no reason why this company should be exempt from the penalty for its gross neglect to obey the plain injunction of an act of assembly.'  The court is, therefore, of the opinion that Defendant's Exhibit A was not "attached" as provided by the Act of Assembly and to find otherwise, a meaning would have to be given to the word other than its plain definition.

337 Pa. at 540-541, 12 A.2d at 311 (citation omitted).

The lesson we glean from Frost is that the words which defined "attach" and upon which the Pennsylvania Supreme Court relied to reach its decision -- bind, fasten, tie, connect or join -- all required the introduction of some method or mechanism to hold loose papers together, such that Metropolitan Life's mere placement of the application inside the insurance policy without

more was not sufficient.  Hence, Federal Kemper's use of a binder to contain the policy, the application and the amendment distinguishes this case from Frost, where the insurer took no steps whatsoever to seek to insure that the various papers it sought to introduce against the insured would be kept together.

Today's meaning of "attach" is virtually identical to its meaning in 1940 when Frost was decided:  "make fast or join (as by string or glue):  bind, fasten, tie ...", Webster's Third New International Dictionary (1981), and likewise connotes the application of a mechanism that holds items in one place.  We thus believe that if under the definition of attach, an insurer may "tie" a policy, an application and amendments with a string, it may also "bind" or "join" these documents in a device with pockets (referred to as a "binder") designed to contain them together, and we further believe that the Pennsylvania Supreme Court would agree.  Moreover, we do not find any support for the district court's conclusion that an insurer must "physically" attach an application and amendments to a policy in order to comply with comply with section 441.[8]  This qualifier is not found in the definition of attach in the Frost decision or in the language of the statute.  We therefore conclude that Federal Kemper's use of a binder is consistent with the plain meaning of section 441.

_____

[8].      The plaintiffs assert that section 441 requires that an application and amendments be "physically" attached or "fastened" to a policy.

B.

As is required by Pennsylvania law, our conclusion not only adheres to the plain meaning of section 441, but also effectuates its general purpose and avoids an unreasonable or absurd result. Section 441 is a prophylactic measure, enacted in the interest of fair dealing and designed to eliminate sharp practices by assuring that a policy holder has all of the documents that comprise the insurance contract. This is not a case where the insurer attempted to take advantage of the insured or neglected to provide the policy holder with a mechanism to keep all parts of the contract between the parties before him and together. Thus, were we to uphold the district court's construction of section 441, the statute would be turned on its head.

Based on our understanding of the language and aim of section 441 and our in-depth review of Pennsylvania's rules of statutory construction and relevant decisions, we find that the district court erred in applying the Pennsylvania Supreme Court's holding in Frost to the facts in this case. We further predict that the Pennsylvania Supreme Court would conclude that an insurer's use of a binder to contain a policy and other essential documents meets the mandate of 40 Pa. C.S.A. § 441.

We therefore hold that the district court erred in granting summary judgment to the plaintiffs on their breach of contract claim, and will vacate the district court's order in this regard. Because there exists a genuine issue of material fact as to whether the December 20 amendment was included in the

binder that insurance agent Raffetto delivered to Dr. Horowitz, however, summary judgment in Federal Kemper's favor on either the plaintiffs' breach of contract claim or its counterclaim for rescission, assuming it met the standard of proof necessary to establish fraud under Pennsylvania law,[9] is precluded, and this case must be remanded for trial.

## III.

In their cross-appeal, the plaintiffs challenge the district court's grant of summary judgment to Federal Kemper on their unfair trade practices and bad faith claims, both of which are based on the September 25, 1992 letter Federal Kemper sent to notify Mrs. Horowitz of its refusal to pay the claim she had made for the proceeds of the life insurance policy. The plaintiffs assert that the letter was unfair and deceptive because it misled Mrs. Horowitz into believing that she had no hope of recovering benefits, and was sent in bad faith because Federal Kemper did not have a reasonable basis for denying the claim.

---

[9]. As noted, because the district court granted summary judgment to the plaintiffs on their breach of contract claim, it did not decide whether Federal Kemper sustained its burden of proof on the essential elements of fraud under Pennsylvania law, see Evans v. Penn Mut. Life Ins. Co., 322 Pa. 547, 555-59, 186 A.2d 133, 139-41 (1936)(ordinarily the issue of fraud is for the jury to decide, but where uncontradicted documents and/or the uncontradicted testimony the insured's own witnesses establish facts essential to the insurer's case, judgment may be entered for the insurer); nor did it reach the plaintiffs' argument based on 40 Pa. C.S.A. § 511(a). See supra, f.n. 4. In light of our disposition of the case, we do not resolve these issues.

In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the Unfair Trade Practices and Consumer Protection Law, 73 Pa. 73 C.S.A. § 201-1 et seq., and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable. Gordon v. Pennsylvania Blue Shield, 378 Pa. Super. 256, 264, 548 A.2d 600, 604 (1988). See Raab v. Keystone Ins. Co., 271 Pa. Super. 185, 187-88, 412 A.2d 638, 639 (1979). In our view, Federal Kemper's September 25, 1992 letter announced its decision to refuse Mrs. Horowitz's claim and its reasons for denying payment, and does not represent misfeasance. We therefore find that the district court did not err in granting Federal Kemper's motion for summary judgment on the plaintiffs' unfair trade practices claim.

Finally, we agree with the district court that the plaintiffs' bad faith claim must fail because under the circumstances, Federal Kemper had a reasonable basis to deny Mrs. Horowitz's claim and ample grounds for its allegations of fraud. See D'Ambrosio v. Pennsylvania Nat'l. Mut. Ins. Co., 494 Pa. 501, 510, 431 A.2d 966, 971 (1981) (in jurisdictions which recognize a cause of action for bad faith conduct on the part of an insurer, the plaintiff must show the absence of a reasonable basis for denying benefits or a reckless disregard of the lack of a reasonable basis for refusing the claim).

IV.

For the foregoing reasons, we will affirm the district court's grant of summary judgment on Counts I and II of the complaint in Federal Kemper's favor. We will vacate the district court's order granting summary judgment to the plaintiffs on Count III and remand for further proceedings on the plaintiffs' breach of contract claim and Federal Kemper's counterclaim for rescission.

_____