**Ralph MILLER, et al.**

v.

**S.T. GOOD INSURANCE, INC.**

**Civil Action No. 96–4172.**

United States District Court, E.D. Pennsylvania.

Jan. 30, 1997.

---

Howard Kenneth Goldstein, Goldstein & Kessler, Philadelphia, PA, for Plaintiffs.

Frank N. Gallagher, James C. Dalton, Eastburn & Gray, Doylestown, PA, for Defendant.

*MEMORANDUM*

BARTLE, District Judge.

This diversity case emanates from a fire which totally destroyed the Falmouth Playhouse in Falmouth, Massachusetts.

Plaintiffs Ralph Miller ("Miller") and Jade Curtain, Ltd. ("Jade"), the owners of the Falmouth Playhouse, as well as the Bucks County Playhouse and the Pocono Playhouse in Pennsylvania, instituted this diversity action against their insurance agent, S.T. Good Insurance, Inc. ("S.T. Good"). The defendant has now moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56. The material facts are not in dispute. *See Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir.1988).

The complaint alleges that as a result of the defendant's efforts, Mt. Hawley Insurance Company ("Mt. Hawley") issued a policy to plaintiffs in 1993 which provided for fire insurance coverage for the three playhouses. The Falmouth Playhouse burned down in early 1994. The value of the destroyed property, as agreed by the insurance company, was $1,465,000. Mt. Hawley, however, denied coverage for two reasons: (1) the plaintiffs had concealed material facts about the plaintiff Miller's previous playhouse fire losses; and (2) Miller was involved in causing the fire. According to the complaint, Mt. Hawley filed a declaratory judgment action against Miller and Jade concerning coverage in the Massachusetts Superior Court which was removed to the United States District Court for the District of Massachusetts. *Mt. Hawley Ins. Co. v. Miller,* No. 95–12535 (D.Mass.). A few months later, Mt. Hawley and plaintiffs amicably resolved that dispute for $625,000. The settlement expressly reserved plaintiffs' right to pursue any claim against S.T. Good for the balance. Plaintiffs contend that S.T. Good is liable for negligence and negligent misrepresentation because it omitted mention of previous fire losses from the insurance application submitted to Mt. Hawley. Plaintiffs seek $840,000, which represents the difference between the $1,465,000 loss and the $625,000 received from Mt. Hawley.

S.T. Good argues it is entitled to judgment on the pleadings or summary judgment because the insurance application was not attached to the Mt. Hawley insurance policy when it was issued. It relies on a Pennsylvania statute which provides that an application can be used to prove fraud or material misrepresentation only if it is attached to the policy when issued.

The Pennsylvania statute in question reads as follows:

All insurance policies, issued ... by insurance companies ... doing business in this State, in which the application of the insured, ... form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, ... and, unless so attached and accompanying the policy, no such application, ... shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, ... be considered a part of the policy or contract between such parties.

Pa.Stat.Ann. tit. 40, § 441.

The statute is "a prophylactic measure, enacted in the interest of fair dealing and designed to eliminate sharp practices by assuring that a policy holder has all of the documents that comprise the insurance contract." *Horowitz v. Federal Kemper Life*

*Assur. Co.,* 57 F.3d 300, 307 (3d Cir.1995). Quoting *Lennox v. Greenwich Ins. Co.,* 165 Pa. 575, 30 A. 940, 941 (1895), the Court of Appeals in *Horowitz* observed:

> It is well known that the evil aimed at in this legislation was the custom of insurance companies to put in their blank forms of application long and intricate questions or statements to be answered or made by the applicant, printed usually in very small type, and the relevancy or materiality not always apparent to the inexperienced, and therefore liable to become traps to catch even the innocent unwary. The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and if it contained errors, have them rectified before it became too late.

57 F.3d at 305.

Since it appears that the plaintiffs' application was not attached to the policy, S.T. Good argues that Mt. Hawley could not rely on the omission of prior fires from the application as a basis to prove material misrepresentation and thus to deny full coverage for plaintiffs' loss. If Mt. Hawley could not invoke the application, the argument goes, any negligence or negligent misrepresentation on the part of S.T. Good for failure to disclose prior fires in the application would be irrelevant and no viable claim against S.T. Good would exist.

Plaintiff counters that the law of Massachusetts, not that of Pennsylvania, is applicable. Massachusetts does not have a statute analogous to Pa.Stat.Ann. tit. 40, § 441. Instead, its law provides:

> No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, *or* **unless the matter misrepresented or made a warranty increased the risk of loss.**

Mass.Gen. Laws Ann. Ch. 175, § 186 (emphasis added).

Under Massachusetts law, an insurance company may consider the insured's misrepresentations in the application whether or not the application was attached to the policy. Since there is a conflict between the law of the two jurisdictions, we must decide whether Pennsylvania or Massachusetts local law is applicable.

As a federal court sitting in a diversity case, we must look to the law of Pennsylvania, the forum state, including its choice of law rules. *Klaxon v. Stentor Electric Mfg. Co. Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). That leads us to *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796, 797 (1964). There, a Pennsylvania domiciliary was killed when an airplane in which he was a passenger crashed in Colorado during a transcontinental flight. The issue was whether the Colorado or Pennsylvania law of damages applied. *Id.* Abandoning the old lex loci delicti rule, the Pennsylvania Supreme Court adopted "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Id.* at 805.

The principles of *Griffith,* which involved tort claims, have been extended to contract actions involving insurance policies. *See, e.g., Melville v. American Home Assur.,* 584 F.2d 1306 (3d Cir.1978); *Caputo v. Allstate Ins. Co.,* 344 Pa.Super. 1, 495 A.2d 959 (1985); *Nationwide Mut. Ins. Co. v. Walter,* 290 Pa.Super. 129, 434 A.2d 164 (1981). Thus, we must weigh and balance the various policies and interests to determine whether Pennsylvania or Massachusetts local law is applicable.

■ S.T. Good argues that the plaintiffs are Pennsylvania citizens, that the binder and later the contract of insurance were issued in Pennsylvania, and that two of the three insured playhouses are located here. On the other hand, plaintiff emphasizes that the playhouse which was destroyed was located in Falmouth, Massachusetts. According to plaintiff, Massachusetts has a greater interest than Pennsylvania when property within its borders is destroyed. We believe that plaintiff has the better argument.

Restatement (Second) of Conflict of Laws § 193 (1971), which relates specifically to fire insurance policies, provides:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.[1]

■ In the absence of any precedent directly on point, we conclude that § 193 sets forth the applicable Pennsylvania choice of law principles in light of *Griffith* and *Melville*. It is undisputed that the insured risk in issue, a building, was situated in Massachusetts. That state has a more compelling interest in what happens to the real estate within its boundaries than does Pennsylvania. Massachusetts also has a more significant interest in dealing with arson to such property and any fraud perpetrated to obtain insurance on it. In addition, the cost of the fire insurance will depend, at least in part, on where the insured risk is located. *See* Restatement (Second) of Conflict of Laws § 193 cmt. c (1971).

Defendant contends that if we apply Massachusetts law here, we would have to apply different law, that is the local law of Pennsylvania, if either of the Pennsylvania playhouses, insured under the same contract, were to be destroyed by fire. The Restatement recognizes this possibility. For certain purposes, the one insurance policy will be treated as "three policies, each insuring an individual risk." Restatement (Second) of Conflict of Laws § 193 cmt. f (1971). We do not find this result anomalous. The princi-

ples of *Griffith, Melville,* and Restatement (Second) of Conflict of Laws § 193 are designed to extricate the court from formalistic reasoning and to allow for individual consideration of the interests and policies involved in a particular case. A functional approach has replaced rigidity.

In conclusion, we find that under its conflict of laws rules, Pennsylvania would apply Massachusetts and not Pennsylvania local law on the issue of whether the insured committed arson and whether the insured or its agents presented false and fraudulent statements to Mt. Hawley for insurance on the Falmouth Playhouse. Consequently, S.T. Good may not invoke Pa.Stat.Ann. tit. 40, § 441, since Pennsylvania local law is not applicable.[2]

The court will deny the motion of S.T. Good for judgment on the pleadings or, in the alternative, for summary judgment.

### *ORDER*

AND NOW, this 30th day of January, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant S.T. Good Insurance, Inc. for judgment on the pleadings or, in the alternative, for summary judgment is DENIED.

---

**1.** The principles set forth in § 6 do not change the result here.

**2.** To the extent it is relevant, we find that the federal court in Massachusetts in *Mt. Hawley Ins. Co. v. Miller,* No. 95–12535 (D.Mass.) would have applied Massachusetts local law in deciding whether the Falmouth Playhouse was destroyed by fire or whether any fraud or misrepresenta-

tion occurred in obtaining the insurance policy to cover it. Like Pennsylvania, Massachusetts has "replaced place-of-making or other one-factor tests with a more functional approach." *Bi–Rite Enters., Inc. v. Bruce Miner Co., Inc.,* 757 F.2d 440, 443 (1st Cir.1985) (quotation omitted); *Aetna Cas. & Sur. Co. v. Clasby,* 788 F.Supp. 61, 64 (D.Mass.1991).