### TENNECO AUTOMOTIVE OPERATING COMPANY INC., Plaintiff,

v.

### VISTEON CORPORATION, Defendant.

### No. Civ. 03–1030–SLR.

United States District Court, D. Delaware.

June 28, 2005.

George Pazuniak, James Michael Olsen, and Francis DiGiovanni, of Connolly Bove Lodge & Hutz, L.L.P., Wilmington, DE. for Plaintiff, Gary H. Nunes, D. Scott Sudderth, Barry S. Goldsmith, John F. Morrow, Jr., of Womble Carlyle Sandridge & Rice, L.L.P., Tysons Corner, VA, of counsel.

Thomas C. Grimm, and Leslie A. Polizoti of Morris, Nichols, Arsht & Tunnel, Wilmington, DE, for Defendant, Harold V. Johnson, James R. Sobieraj, Timothy P. Lucier, of Brinks Hofer Gilson & Lione, Chicago, IL and Raymond J. Vivacqua, and James K. Cleland, of Brinks Hofer Gilson & Lione, Ann Arbor, MI, of counsel.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

On November 10, 2003, plaintiff Tenneco Automotive Operating Company filed the present action against defendant Visteon Corporation, alleging infringement of U.S. Patent Nos. 4,969,264 ("the '264 patent") and 5,118,476 ("the '476 patent") (collectively "the patents in suit"). Presently before the court is defendant's motion for partial summary judgment on lost profits, marking, and willfulness. (D.I.178) For the reasons set forth below, the court denies defendant's motion.

## II. BACKGROUND

Plaintiff and defendant compete in the automotive parts and equipment industry. Each manufactures catalytic converters and supplies those converters to major automakers for use in automobiles. Gener- ally speaking, catalytic converters consist of a metal tube, a catalyst substrate and, usually, a support material.

The '264 patent claims processes for making catalytic converters, while the '476 patent claims catalytic converters. Plaintiff first began selling catalytic converters embodying the '264 and '476 patent in 1987. (D.I. 192, ex. 11 at 92) From 1996 to 2003, plaintiff sold approximately $6.5 million worth of patented converters in the aftermarket. (Id., ex. 12 at TA–00975 to TA–00976)

There are four different methods of manufacturing catalytic converters: (1) "clamshell" or "shoebox" converters in which two metal sections or shells are welded together with the substrate and the support material sandwiched between the shells; (2) "tourniquet" converters in which a steel sheet is wrapped/pulled around the substrate and support material and overlapping ends of the sheet are welded along a seam; (3) "hard stuffed" converters in which the substrate and support material are stuffed into a metallic tube that is of smaller diameter than the diameter of support material wrapped around the substrate; and (4) "soft stuffed," "swaged," or "sized" converters in which the substrate and support material are inserted into a metallic tube which then has its diameter reduced. (D.I. 179 at 3–7; D.I. 192 at 2–3) Catalytic substrates can be metallic or ceramic. (D.I. 179 at 7, ex. C at 19) The support material can be made of either fibrous or wire mesh. (D.I. 179 at 7)

Plaintiff did not mark its products with the numbers of the patents in suit until May or June of 2004, well after it initiated the present lawsuit. (D.I. 179, ex. C at 57) On September 19, 2003, counsel for plaintiff sent a letter to defendant's CEO, alleging that two of defendant's catalytic

converters[1] infringed the '476 patent. (D.I.179, ex. R) The letter also indicated that other products manufactured by defendant may also infringe, although it did not list any additional products. (*Id.*) Finally, plaintiff claimed in the letter that the manufacturing processes used to make the allegedly infringing catalytic converters infringed the '264 patent. (*Id.*) Defendant did not respond to this letter. (D.I. 179 at 29; D.I. 192, ex. 18 at 3)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences

therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. Lost Profits

■ Part of plaintiff's damages claim is for lost profits. (D.I. 179, ex. A at 14) To recover lost profits damages, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer. *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed.Cir.1995). The Federal Circuit has adopted a four-factor test, first articulated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir.1978), as a standard, non-exclusive method for a patentee to establish entitlement to lost profits damages.[2] Under the *Panduit* test, the patentee must prove: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manu-

---

1. Both accused catalytic converters were U152 converters. (D.I. 179 at 28)

2. Besides the *Panduit* test, the Federal Circuit has recognized that a patentee also may prove lost profits under a market share theory.

*State Indus., Inc. v. Mor–Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed.Cir.1989). The parties did not address this alternative method of demonstrating lost profits in their respective briefs.

facturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made. *Id.*

■ "[T]o prove that there are no acceptable non-infringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1373 (Fed.Cir.1991). A patentee need not negate every possibility that a purchaser might have bought a product other than its own. *Rite–Hite,* 56 F.3d at 1545. To the contrary, so long as the patentee establishes each of the *Panduit* factors, the court may reasonably infer that the claimed lost profits were caused by the infringing sales. *Id.* Thus, by satisfying the *Panduit* test, the patentee establishes its prima facie case with respect to "but for" causation. The burden, in turn, shifts to the alleged infringer to show that the inference is unreasonable for some or all of the lost sales. *Id.*

■ There is a genuine issue of material fact as to whether consumers in the marketplace purchased the patented products for the patented features. Defendant presented evidence of little interest in swaged converters in the catalytic converter industry, and that some of plaintiff's customers would not accept swaged converters. (D.I. 179, ex. C at 86–87, ex. G at 76–77) Defendant also produced evidence that Ford has readily accepted shoebox converters as an alternative for other designs. (*Id.,* ex. K, ex. L at 20, ex. M at TA–05424) Finally, defendant produced evidence that Ford purchased defendant's products, not because of the patented features, but because of United Auto Workers' contracts. (*Id.,* ex. N at 7–8, 12–14, ex. O at 47, ex. U) On the other hand, plaintiff produced evidence that Ford's requirements dictated defendant's catalytic converter and method of manufacture. (D.I. 192, ex. 4 at 44–45, 74, ex. 5 at 126, 155, ex. 33 at 76, ex. 34 at 250, ex. 35 at 35, 41, ex. 36) Plaintiff also produced evidence that Ford demanded infringing converters over non-infringing alternatives. (*Id.,* ex. 4 at 14–15, 21–22, 57–58, 60, 85–87)

■ There is also a genuine issue of material fact as to whether the clamshell, shoebox, tourniquet, and hard stuffed methods of manufacturing catalytic converters, and the converters manufactured by these methods, are acceptable alternatives to the '264 patent process and the '476 patent catalytic converters. Defendant produced evidence that these methods and products are acceptable alternatives and functionally equivalent to the patented methods and products. (D.I. 179, ex. C at 65, ex. F at 53, ex. G at 76–77, ex. L at 252–53, ex. O at 113–14, ex. P at 72–73, ex. Q at 23) Furthermore, plaintiff's heavy production and sales of catalytic converters manufactured by clamshell, shoebox, tourniquet, and hard stuffed methods suggest that these methods and converters are acceptable alternatives to the patented processes and products. (*Id.,* ex. C at 22–24, 86–88, ex. F at 15, 80–82, ex. H, ex. I, ex. J at 14, ex. L at 17) plaintiff rebutted this evidence by presenting its own evidence that these alternatives were not acceptable. (D.I. 192, ex. 3 at 27, ex. 4 at 15, ex. 5 at 12–14, 125–26, 155, ex. 6 at V142947N, ex. 7 at 105–107, ex. 10 at 48–49)

■ Finally, there is a genuine issue of material fact as to whether plaintiff had the manufacturing capability to satisfy demand for the patented products. Defendant produced evidence that plaintiff's production of the patented converters is minimal. (D.I. 179, ex. F at 15, 79–82) Plaintiff countered with evidence suggest-

ing it has substantial production capabilities. (D.I. 192, ex. 11 at 92, ex. 12 at TA–00975 to TA–00976)

Because there are genuine issues of material fact, the court denies defendant's motion for summary judgment on plaintiff's claim of lost profits damages.

### B. Marking and Notice of Infringement

■ Patentees may give the public notice that a product is patented by marking the product (i.e., fixing the word "patent" or the abbreviation "pat.", along with the patent number, on the product or its packaging).[3] 35 U.S.C. § 287(a). "In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." *Id.* "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed.Cir.1994). Compliance with 35 U.S.C. § 287(a) is a question of fact. *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed.Cir.1996).

■ On September 19, 2003, plaintiff sent defendant a letter alleging that defendant's U152 catalytic converters infringed the '476 patent. (D.I.179, ex. R) Plaintiff also indicated that other products manufactured by defendant may also infringe, but did not identify these additional products. (*Id.*) Such letters have been deemed sufficient notice that the remaining accused products infringe the patents in suit.

*See, e.g., Gart v. Logitech, Inc.,* 254 F.3d 1334, 1347 (Fed.Cir.2001) (finding a letter gave actual notice of infringement by the "TRACKMAN MARBLE +" and "TRACKMAN MARBLE FX" products, even though it only mentioned the "TRACKMAN MARBLE" product). Therefore, the court denies defendant's motion for summary judgment on plaintiff's failure to mark or provide notice of infringement.

### C. Willful Infringement

■ A determination of willful infringement is based on the totality of the circumstances. *Knorr–Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.,* 383 F.3d 1337, 1342 (Fed.Cir.2004). The Federal Circuit has identified several factors that may be considered in determining whether infringement is willful: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) the duration of defendant's misconduct; (7) remedial action taken by defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 827 (Fed.Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 975 (Fed.Cir.1995).[4] However, "[a] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge." *Gustafson, Inc.*

---

**3.** Plaintiff did not mark its products until May or June of 2004. (D.I. 179, ex. C at 57)

**4.** Although *Read Corp.* presented these factors as part of its analysis on enhancing damages,

the Federal Circuit subsequently adopted these factors for determining willfulness. *Knorr–Bremse,* 383 F.3d at 1343.

*v. Intersystems Indus. Produs., Inc.*, 897 F.2d 508, 511 (Fed.Cir.1990). Willfulness of infringement is a finding of fact. *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 979 (Fed.Cir.1986).

█ Plaintiff contends that the duration of defendant's alleged willful infringement exceeds 21 months. (D.I. 192, ex. 22 at 19, ex. 29 at 3–4; D.I. 208 at 11) Plaintiff has produced evidence that defendant has not taken any remedial measures since plaintiff's cease and desist letter. (D.I. 192, ex. 29 at 3–4) Finally, plaintiff has produced evidence that defendant attempted to hide its infringing activity. (D.I. 192, ex. 8 at 56, 58–60, 72, 75, ex. 46 at V045321; ex. 47 at 344–48, ex. 49 at 28, 128–29, ex. 50 at 47, 62–63, 67, ex. 51 at 16, ex. 52 at 211–12) Defendant has characterized itself as "a large corporation" in its motion for summary judgment. (D.I. 179 at 30) For its part, defendant has argued that the period between when it was first aware of the patents in suit and when plaintiff filed its complaint is insufficient to give rise to willful infringement. (D.I. 179 at 29–30) Defendant also has argued that, from the beginning of this lawsuit, it has pursued good faith legitimate defenses to plaintiff's infringement claims. (D.I. 179 at 31) The court finds there to be genuine issues of material fact and, therefore, denies defendant's motion for summary judgment of no willful infringement.

## V. CONCLUSION

For the reasons stated, the court denies defendant's motion for summary judgment on lost profits, marking and willfulness. (D.I.178) An appropriate order shall issue.

### ORDER

At Wilmington this 28th day of June, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that defendant's motion for summary judgment on lost profits,

marking, and willfulness (D.I.178) is denied.